In re Frederick B. STROM, Patricia G. Strom, Debtors.

James Oliver CARTER, Trustee, Plaintiff,

v.

Howard D. HOMESLEY and wife, Jane B. Homesley; Capital Adhesive Co.; Toby Strom; Frederick B. Strom and wife Patricia G. Strom, Defendants.

Bankruptcy No. M–84–01108–7.
Adv. No. M–84–0161–AP.

United States Bankruptcy Court, E.D. North Carolina.

Feb. 4, 1985.

James Oliver Carter, Wilmington, N.C., trustee.

David Sneeden, Wilmington, N.C., for Howard and Jane Homesley.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This adversary proceeding is an action to recover preferential transfers, two deeds of trust, pursuant to 11 U.S.C. § 547. The trial was held in Wilson, North Carolina on January 24, 1985.

This bankruptcy court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and the general order of reference from the United States District Court for the Eastern District of North Carolina dated August 3, 1984. This proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F) in which this bankruptcy court may enter a final judgment. 28 U.S.C. § 157(b)(1).

This Memorandum Opinion only addresses the plaintiff's First Claim for Relief in this adversary proceeding. The other claims for relief involve other defendants.

## FACTS

The plaintiff, James Oliver Carter, is the trustee for the estate of the chapter 7 debtors, Frederick Strom and Patricia Strom. The debtors filed a voluntary joint chapter 7 bankruptcy petition on July 27, 1984.

The defendants, Dr. Howard D. Homesley and his wife, Jane B. Homesley, formerly owned a beach house (Unit # 19—Forest by the Sea) at Wrightsville Beach, North Carolina. On June 30, 1982, Dr. Homesley, as landlord, and the Stroms, as tenants, entered into a lease for Unit # 19—Forest by the Sea commencing on June 30, 1982 and terminating on September 30, 1983. The lease called for monthly rent of $525.00.

At the same time, the Homesleys and the Stroms entered into a contract ("Offer to Purchase and Contract") for the sale of Unit # 19—Forest by the Sea. The purchase price was $91,000 as follows:

| | |
|---|---|
| $ 500.00 | Earnest Money Deposit |
| 5,000.00 | By June 30, 1982 |
| 7,600.00 | September 30, 1983 at Closing |
| 60,109.53 | Assumption of first Deed of Trust (Peoples Federal Savings & Loan) |
| 17,790.47 | Promissory Note and Purchase Money second Deed of Trust |
| $91,000.00 | |

The contract contained the following provision:

(Wrap around mtg. to remain 13.5%. Deed will not be recorded. Buyer to pay his attorney for drawing 2nd mtg. + wrap around mtg.)

The contract was signed by Mr. and Mrs. Strom and Dr. and Mrs. Homesley, but the contract indicated that the deed was to be made solely to Patricia Ann Strom.

The sale of the beach house was closed on October 1, 1983 in the law office of Alton Y. Lennon in Wilmington, North Carolina. Mr. and Mrs. Strom attended the closing; Dr. and Mrs. Homesley did not attend, but were represented by their realtor, Scott Rudisill.

A deed to the beach house was executed by the Homesleys in favor of Patricia Ann

Strom. Mr. and Mrs. Strom executed two promissory notes payable to Dr. and Mrs. Homesley; one note in the amount of $59,818.92 represented the balance due on the first deed of trust to Peoples Federal Savings and Loan. The second note was in the amount of $18,000 and represented the balance of the purchase price.

Each of the promissory notes was secured by a deed of trust executed by Mr. and Mrs. Strom. Both deeds of trust were denominated as "purchase money deeds of trust." The deed of trust securing the $59,818.92 note is what the contract of sale referred to as the "wrap around mortgage."

As called for in the contract of sale, the deed to Mrs. Strom was not recorded—neither were the deeds of trust. Instead, the Stroms and the Homesleys entered into an escrow agreement under which the deed, the promissory notes and the deeds of trust were to be held by Mr. Lennon as escrow agent. The escrow agreement was not recorded until June 12, 1984.

The escrow agreement directed the escrow agent to hold the documents until October 4, 1984, at which time, if authorized by the Stroms, the deed and the deeds of trust would be recorded. If the Stroms did not authorize the recordation of the documents on October 4, 1984, the documents would continue to be subject to the escrow agreement. The Stroms, prior to October 4, 1984, had the unconditional right to direct the escrow agent to record and deliver the documents. The Homesleys had no such right.

Under the terms of the escrow agreement, the Homesleys were to make payments under the original first deed of trust to Peoples Federal Savings and Loan. Reimbursement for those payments was to come from the payments made by the Stroms under the $59,818.92 "wrap around mortgage."

This unorthadox sales transaction was proposed by Mr. Strom who was afraid that he would not qualify to assume the Peoples Federal Savings and Loan first deed of trust. Apparently, the Peoples Federal Savings and Loan deed of trust contained a "due on sale" clause, and the escrow agreement was designed to keep Peoples Federal Savings and Loan from learning of the sale. The agreement not to record the deed was an essential element of the sales contract to which all parties agreed.

Things did not go well between the Homesleys and the Stroms. Dr. Homesley made the payments to Peoples Federal Savings and Loan as required by the escrow agreement through August, 1984. The Homesleys made monthly payments to Peoples Federal Savings and Loan from October, 1983 to February, 1984 (5 payments) in the amount of $850 and payments from March, 1984 to August, 1984 (6 payments) in the amount of $825. The Homesleys also paid homeowners' dues to Forest by the Sea Homeowners Association totaling $585 from January, 1984 to August, 1984.

The Homesleys were to receive reimbursement for the payments made to Peoples Federal Savings and Loan from the Strom payments under the "wrap around mortgage." The Stroms stopped making payments sometime in early 1984, and the Homesleys, understandably, became concerned.

In July, 1984, the Stroms, believing that the Homesleys would try to "throw them out," asked Mr. Lennon, the escrow agent, to record the documents. Mr. Lennon requested written instructions to that effect and a letter directing Mr. Lennon to record the documents was signed by Mr. Strom for Mrs. Strom on July 19, 1984.

On the same date, July 19, 1984, Mr. Lennon recorded the deed and the deeds of trust in the Office of the Register of Deeds for New Hanover County. The deeds of trust were recorded at Book 1260, Page 854 and Book 1260, Page 856. The debtors were insolvent at this time.

On July 24, 1984, a deed dated July 18, 1984, executed by Mrs. Strom, was recorded conveying the beach house to Mr. and Mrs. Strom as tenants by entireties. Three days later, on July 27, 1984, the Stroms filed their bankruptcy petition.

Both Mr. and Mrs. Strom claimed a $7,500 exemption in the beach house under the North Carolina residence exemption, N.C.G.S. § 1C–1601(a)(1), for a combined exemption in the house of $15,000.

The Homesleys made one postpetition $825 payment to Peoples Federal Savings and Loan and made one postpetition $60 payment for homeowners' dues. Although the testimony is unclear as to how many payments the Stroms were delinquent, the court accepts Dr. Homesley's testimony that the unreimbursed advances by the Homesleys to Peoples Federal Savings and Loan and for homeowners' dues total $4,525. The unreimbursed payments made after recordation of the deeds of trust (July 19, 1984) total $885.

## DISCUSSION AND CONCLUSIONS

The rights of the Homesleys and the Stroms with respect to the sale of the beach house were fixed when the transaction was closed on October 1, 1983. The sale was unconditional; the Homesleys had sold, and Mrs. Strom had purchased. Additionally, the Stroms were obligated to repay two promissory notes of $59,818.92 and $18,000, and their obligation was secured by purchase money deeds of trust on the beach house Mrs. Strom had acquired. The Homesleys retained no right to recall the deed, and the Stroms could not recall the deeds of trust. The transaction was complete when the deed and deeds of trust were delivered to Mr. Lennon. P. Hetrick, *Webster's Real Estate Law in North Carolina*, § 202 at 209 (1981). Mrs. Strom could have the deed recorded at any time, all she had to do was make a request.

To make the sale transaction work, however, it was necessary for the parties to practice a deception on Peoples Federal Savings and Loan. From the beginning, both parties agreed that the deed would not be recorded so that the sale could be kept secret from Peoples Federal Savings and Loan. The parties did not want to take a chance that Peoples Federal Savings and Loan would exercise its "due on sale" rights and accelerate the balance of the first deed of trust. By using the unusual escrow procedure, however, the parties were taking other risks. By not recording the deed, Mrs. Strom was taking a chance that the Homesleys might convey the beach house to a third party. By not recording the deeds of trust, the Homesleys were taking an equally precarious, although less obvious, risk that the debtors would seek bankruptcy relief.

The elements of a preferential transfer applicable to this adversary proceeding are: any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

11 U.S.C. § 547 was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, enacted July 10, 1984, but the amendments are only effective with respect to *cases* filed 90 days after enactment. This adversary proceeding was filed on October 11, 1984, which is more than 90 days after

enactment, but the *case* was filed on July 27, 1984, less than 90 days after enactment, and the amendments to § 547 are not applicable to this proceeding.

■ The transfers in question are the deeds of trust executed by the debtors in favor of Dr. and Mrs. Homesley. Under § 547(e)(2)(B), a transfer is considered to be made when it is "perfected" (unless perfected within ten days from the time it "takes effect" under § 547(e)(2)(A)). In this instance, the deeds of trust "took effect" when the transaction was closed on October 1, 1983. The deeds of trust, however, were not "perfected" until recorded on July 19, 1984. Since perfection took place more than ten days after the transaction "took effect," the date of the transfer is the date of perfection—July 19, 1984. In North Carolina, a deed of trust on real property is "perfected" when it is recorded.

July 19, 1984, is within 90 days of the filing of the debtors' petition, and there is no dispute that the transfer of the deeds of trust took place at a time when the debtors were insolvent, and was made for the benefit of a creditor (the Homesleys).

It is also clear that the transfers were made on account of an antecedent debt. The debt is the two promissory notes of $59,818.92 and $18,000. The debtors were obligated to pay these notes when they were executed—that obligation was not effected by the escrow agreement. The debtors, in fact, made several of the note payments.

■ In North Carolina, purchasers of real property who execute purchase money notes and deeds of trust have no personal liability for the underlying indebtedness and the seller's remedy is to foreclose the deed of trust. N.C.G.S. § 45–21.38; *Ross Realty Co. v. First Citizens Bank & Trust Co.*, 296 N.C. 366, 250 S.E.2d 271 (1979). This state of the law, however, does not render the debtors' obligations under the notes and deeds of trust any less an "antecedent debt." Debt is defined in the Bankruptcy Code to be "liability on a claim." (11 U.S.C. § 101(11)). A "claim" means a "right to payment ... (which may be) secured...." 11 U.S.C. § 101(4). Although the debtors had no personal liability for the purchase money obligation, the property of the debtors, i.e., the beach house, was subject to the liability evidenced by the notes and the deeds of trust.

■ Dr. and Mrs. Homesley contend that the transaction does not satisfy the final preference element, that the transferee receive more as a result of the transfer than the transferee would have received in a chapter 7 case if the transfer was not made. In support of that contention, the Homesleys argue that the debtors claimed a $15,000 exemption in the beach house and that transfers of exempt property are not voidable as preferences. 4 *Collier on Bankruptcy* § 547.25 at 547–92 (15th ed. 1984).

Under the Bankruptcy Code, a debtor may, in some circumstances, claim an exemption in property avoided as a preferential transfer. 11 U.S.C. § 522(g), however, provides that a debtor may not claim an exemption in such property if the transfer avoided was a voluntary transfer of the debtor.

In this adversary proceeding, the transfers were deeds of trust voluntarily given by the debtors. The benefit of the avoidance, therefore, inures to the creditors, not to the debtors. Any exemption for the debtors in the beach house must come from the "equity," after deducting the amount of the first and second deeds of trust from the value of the property. Clearly, the Homesleys would receive more as a result of the transfers than they would receive if the transfers were not made and there was a liquidation under chapter 7.

As affirmative defenses, the Homesleys maintain that the transfers are protected by the exceptions found in § 547(c)(1), (3), and (4).

Section 547(c)(1) provides that a transfer is not a voidable preference

to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

The transfers may have been intended to be a contemporaneous exchange, with the deed and deeds of trust being executed simultaneously, but, in fact, it didn't work that way. The new value was given by the Homesleys on October 1, 1983, when the sale was closed and the deed was delivered to the escrow agent. The transfers, however, took place on July 19, 1984, more than 9 months later. To qualify for the § 547(c)(1) exception, the exchanges must be contemplated as contemporaneous and in fact be "substantially contemporaneous." A nine month delay is not "substantially contemporaneous," and § 547(c)(1) is not available to the Homesleys.

Next, it is contended that § 547(c)(3) saves the transactions from being preferential. 11 U.S.C. § 547(c)(3) excepts transfers

of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before 10 days after such security interest attaches.

This is another part of § 547 which was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, but for the reasons stated above, the amendment is not applicable to proceedings in the debtors' case.

The purchase money deeds of trust meet the requirements of subsection A, since they are security interests given contemporaneously with the transfer of the property to the debtors. The security interest, however, was not "perfected" before 10 days after the security interest attached. The security interest attached on October 1, 1983, when the deed and deeds of trust were executed and delivered to the escrow agent. Perfection occurred when the deeds of trust were recorded on July 19, 1984, more than nine months later. The requirements of subsection B, therefore, are not met, and § 547(c)(3) does not apply in these circumstances.

Finally, the Homesleys rely on § 547(c)(4) which excepts transfers

to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

This section is partially available to the Homesleys, but only to the extent of "new value" given *after* the transfers. In August, 1984, the Homesleys paid the $825 first deed of trust payment to Peoples Federal Savings and Loan and the $60 payment to the Forest by the Sea Homeowners Association. These payments were made after the July 19, 1984 transfers, constituted new value, and, as it turns out, were unsecured. The Homesleys, therefore, are entitled to a "setoff" against any recovery by the trustee to the extent of $885.

The court concludes that all of the requirements of § 547(b) have been met, that the defendants' affirmative defenses under § 547(c)(1) and § 547(c)(3) have not been established, and that the defendants are entitled to a $885 setoff pursuant to § 547(c)(4).

Since the beach house has apparently been sold by the trustee free of liens, with all liens attaching to the proceeds, the trustee, in effect, has recovered the property pursuant to 11 U.S.C. § 550(a).

Finally, while the Homesleys did not raise the defense of § 550(d)(1)(B), the court feels compelled to comment on that section.

§ 550(d)(1)(B) says that a "good faith" transferee whose transfer is avoided, has a lien on the property recovered to secure an increase in value of the property as the result of an "improvement" made by the transferee. "Improvement" is defined to include payment of any debt secured by a lien on the property. (§ 550(d)(2)(D)). The unreimbursed payments of $4,525 made by the Homesleys to Peoples Federal Savings and Loan and to the homeowners association satisfied liens securing obligations to those two creditors. These payments were "improvements."

The defense of § 550(d)(1)(B), however, is only available to a "good faith" transferee. In this case, the Homesleys and the Stroms purposely structured the transaction in such a way as to deceive Peoples Federal Savings and Loan and deprive that institution of its rights. In these circumstances, the Homesleys were not "good faith" transferees and the defense of § 550(d)(1)(B) should not be available.

Accordingly, a judgment shall be entered avoiding the deeds of trust pursuant to § 547(b) and allowing a setoff to the Homesleys of $885.