In re Theo J. **VATNSDAL**, aka Theo Vatnsdal, dba **Valley Refinishing and** dba **Progressive Coatings, Debtor.**

Wayne **DREWES, as Bankruptcy** Trustee for Theo J. **Vatnsdal,** **Plaintiff,**

v.

E. Will **VATNSDAL, Defendant.**

Bankruptcy No. 90–05913.
Adv. No. 91–07050.

United States Bankruptcy Court, D. North Dakota.

Sept. 27, 1991.

Wayne Drewes, trustee.

Kip M. Kaler, Fargo, N.D., for plaintiff.

Lawrence Dubois, Cavalier, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding was commenced by the Trustee on May 28, 1991 seeking to avoid as a preferential transfer a mortgage given to the Defendant, E. Will Vatnsdal (Will) by the Plaintiff/Debtor, Theo J. Vatnsdal (Theo) pursuant to section 547 of the Bankruptcy Code. Trial was held on September 24, 1991. In addition to the evidence produced at trial, the parties stipulated to certain facts as uncontested.

### FINDINGS OF FACT

Theo and Will are brothers and the parties agree Will is an insider as defined by 11 U.S.C. § 101(31)(A). Theo, over the years, has farmed the family farm situated in Pembina County, North Dakota, formerly consisting of five (5) quarters. Will resides in Omaha, Nebraska where, for the past ten (10) years he has engaged in insurance, real estate and financial planning.

In 1988, financial difficulties caused Theo to surrender a portion of his farm land back to Federal Land Bank, leaving him land upon which FmHA held a mortgage and which apparently continued to cause him financial difficulties. FmHA agreed to a cash buy-down on one of the quarters providing Theo could pay them in cash the agreed value of $68,535.00.

Theo was unable to come up with the money himself using conventional sources, but earnestly wished to retain his remaining land because it had been in his family for 100 years. The only option left him

was to approach his brother, Will, for the money.

He and Will had discussions in 1988 which led to Will lending him $69,000 on July 20, 1989. This loan was evidenced by a promissory note of even date payable on demand at the rate of 7% per annum. The cash was deposited in Theo's attorneys trust account and from there a $68,535.00 disbursement was made to FmHA in satisfaction of the buy-down. The note to Will was secured by a mortgage executed on July 20, 1989 and covering the following described tracts, to wit:

> The East Half of the Southeast Quarter (E½ SE¼) of Section Fourteen (14), Township One Hundred Sixty (160), Range Fifty-six (56) and the West Half (W½) of Section Thirteen (13), Township One Hundred Sixty (160), Range Fifty-six (56), situated in the County of Pembina and State of North Dakota.

The mortgage, in the sum of $69,000.00, was not recorded until a year later when, on June 5, 1990, it was recorded in the Office of the Register of Deeds for Pembina County, North Dakota.

On October 31, 1990, Theo filed a voluntary petition for relief under chapter 7. The petition schedules reveal outstanding unsecured debt of $113,000.00, secured debt of $225,000.00 including Will's mortgage and priority debts of $37,000.00. The Trustee testified that he presently has $2,200.00 in cash available for distribution and as matters presently stand, does not expect there to be anything available for distribution to the unsecured creditors.

Will concedes that Theo was insolvent from or before June 5, 1990 to the date of petition filing.

### CONCLUSIONS OF LAW

#### 1.

The Trustee instituted this action to invalidate the mortgage held by Will, contending that the act of its recordation constitutes a preferential transfer within the meaning of section 547.

■ Under section 547(b) a trustee may avoid the transfer to a creditor of an interest in property by the debtor that is made (1) on or within ninety (90) days before the date of the filing of the bankruptcy petition, (2) while the debtor was insolvent, (3) on account of an antecedent debt, and (4) which enables the creditor to receive more than it would have received in a bankruptcy liquidation.

The important dates here are July 20, 1989, the date the note and mortgage were executed, and June 5, 1990, the date when the mortgage itself was recorded.

Under section 547(e)(1)(A), a transfer of real property is perfected when a bona fide purchaser of the property cannot acquire an interest superior to that of the transferee. In North Dakota, perfection of a mortgage on real estate as against subsequent purchasers and encumbrancers is accomplished by recordation. NDCC § 35–03–07. Until recordation occurs, an unrecorded mortgage, while effective as between the parties themselves, is ineffective as against bona fide purchasers for value. NDCC § 47–10–08. Hence, under section 547(e)(1)(A), a transfer occurs only when the recording is complete pursuant to North Dakota law. Thus, it must be concluded that a transfer for purposes of section 547(b) occurred on the date of perfection—June 5, 1990. Because Will has conceded to be an insider, the preference period is one year rather than ninety (90) days and the transfer occurred within the statutory preference period. The element of insolvency is conceded.

■ Will executed the note on July 20, 1989, and on that date became obligated for its repayment. A "debt" is defined by section 101(12) as a liability on a claim, while a "claim", in turn, is defined by section 101(5)(A) as a right to payment whether liquidated or unliquidated. The note, as a demand note, constituted an immediate right to payment irrespective of the mortgage given as security and as such, must be regarded as an antecedent debt. Indeed, case law suggests that a debt is deemed antecedent if the transfer made contemporaneously with the incurring of the debt is not perfected within the ten (10)

day statutory grace period provided by section 547(e). *In re Marston*, 33 B.R. 597, 599 (Bankr.N.D.Ohio 1983).

■ Will, as a secured creditor, stands to recover all of the debt owing him since ultimately he would be able to foreclose on his mortgage. Theo's total indebtedness is, according to his schedules, $375,000.00 and total assets are $181,000.00 including exemptions claimed of $16,000.00. Assets available for satisfaction of claims total at best $165,000.00 and priority and secured claims (including Will's mortgage) total $219,000.00. Obviously, there will be nothing available for distribution to the unsecured creditors and Will, by virtue of having recorded the mortgage, stands to receive much more than if he had not received the transfer.[1]

In sum, and based upon the foregoing analysis, the recording of the mortgage on June 5, 1990 was a preferential transfer avoidable under section 547.

### 2.

Will attempts to avoid this result by claiming to come within the "new value" exception of section 547(c)(1) and the "ordinary course of business" exception of section 547(c)(2).

■ Section 547(c)(1) provides that a transfer otherwise meeting the preference elements is not avoidable to the extent the transfer was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneously exchange.

11 U.S.C. § 547(c)(1).

While Theo and Will may have intended there to be a contemporaneous exchange, the exchange we are concerned with here did not occur until June 5, 1990, some eleven (11) months after value was given Theo in the form of $69,000.00 in cash. A delay of eleven (11) months between the value

and the transfer at issue cannot be regarded as a "substantially contemporaneous exchange". E.g., *In re Strom*, 46 B.R. 144 (Bankr.E.D.N.C.1985).

■ Section 547(c)(2) excepts from preference recovery a transfer that was:

(A) In payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and transferee;

(B) Made in the ordinary course of business or financial affairs of the Debtor and the transferee;

(C) Made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

For a transaction to fall within the ordinary course of business exception, it must be ordinary for both the debtor and the creditor. While there is no precise legal test that can be applied, the Eighth Circuit has said that the cornerstone element of the defense is that the creditor must "demonstrate some consistency with other business transactions between the debtor and creditor". *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir.1991). The circumstances surrounding the transaction between Theo and Will were not incurred in the *ordinary* course of business of either Theo or Will. Theo had already lost the bulk of his farm land and, being in desperate straits, approached his brother for a secured loan sufficient to retain several quarters. This situation was not a reoccurring event and the resulting loan certainly could not be regarded as being ordinary in the sense of an ongoing business relationship between Theo and Will. Doubtless, it was viewed by both as an extremely unusual and, hopefully, a never-to-be-repeated event. Nor does the Court find any evidence suggesting that it was Will's common business practice to make fully leveraged loans but not to perfect his lien for nearly a year after execution of the note and mortgage. The Code itself hints at what is the normal boundary for non-con-

---

**1.** If the mortgage had never been recorded, the trustee, armed with the avoidance powers of section 544(a)(3), would have, at the time of the petition filing acceded to the priority status of a bona fide purchaser and thus relegated Will to an unsecured position.

**476**

temporaneous lien perfection. Section 547(e)(2)(A) and (B) provide that a transfer will be deemed to be contemporaneous with the exchange between the parties if it is perfected within ten (10) days thereof. This section harkens to what would be normally expected in an ordinary business transaction involving the granting of a security interest or lien on real estate.

For the foregoing reasons, the defense of section 547(c)(1) and (c)(2) fail and the act of perfecting the mortgage by its recording constitutes a preference.

Admittedly, this is a harsh result for Will, who no doubt entered into the deal with his brother as a goodwill gesture made in an effort to save what remained of the family farm and honestly believed he would be protected. Unfortunately, Theo's bankruptcy intervened which dramatically altered the legal relationship of the parties. Preference recoveries are unique to bankruptcy and often appear unfair to the creditor against whom recovery is sought. The objective however is to achieve equality of distribution among all creditors. *Matter of Kroh Bros. Development Co.*, 930 F.2d 648, 652 (8th Cir.1991).

Accordingly, IT IS ORDERED that judgment be entered in favor of the Plaintiff Wayne Drewes, Trustee, and against the Defendant, E. Will Vatnsdal, avoiding the mortgage deed filed of record as Document # 197050 in the Office of the Register of Deeds, Pembina County, North Dakota, on June 5, 1990 and covering the following described tracts, to wit:

The East Half of the Southeast Quarter (E½ SE¼) of Section Fourteen (14), Township One Hundred Sixty (160), Range Fifty-six (56) and the West Half (W½) of Section Thirteen (13), Township One Hundred Sixty (160), Range Fifty-six (56) situated in the County of Pembina and the State of North Dakota.

JUDGMENT MAY BE ENTERED ACCORDINGLY.