**In re Salvatore James MARINO and Dolores Carmen Marino, Debtors.**

**Carolyn A. DYE, Chapter 7 Trustee, Appellant,**

**v.**

**Kenneth J. RIVERA, Appellee.**

**BAP No. CC–93–1848–MVH.**

**Bankruptcy No. LA 91–76426–BR.**

**Adv. No. LA 92–03584–BR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 19, 1995.

Decided Feb. 16, 1996.

Nicholas A. Franke, Los Angeles, CA, for Appellant.

Gary E. Klausner, Los Angeles, CA, for Appellee.

Before MORGAN,[1] VOLINN, and HAGAN, Bankruptcy Judges

## OPINION

MARILYN MORGAN, Bankruptcy Judge:

The chapter 7 trustee of the debtors' estate appeals the bankruptcy court's ruling denying in part a complaint to avoid as preferential transfers two deeds of trust given to Rivera. For the reasons set forth below, the judgment is affirmed.

### I. FACTS

Approximately seven months before the Marinos' bankruptcy was filed, Kenneth Rivera and the Rivera Trust lent $2.5 million to Jim Marino and his automobile dealership, Jim Marino Imports, Inc. The terms of the loan provided for interest-only payments at 10.5% interest. As the Marinos and the Riveras had been friends and business associates since 1971, Rivera did not obtain a credit report or request financial statements from Marino before funding the loan. Marino executed a promissory note dated October 24, 1990 and provided, as security for the loan, deeds of trust to two parcels of property, one

---

1. Hon. Marilyn Morgan, Bankruptcy Judge for the Northern District of California, sitting by designation.

located in Riverside County and the other located in Orange County, California.

At the time both properties were cross-collateralized by deeds of trust in favor of Tokai Credit Corporation securing a loan in the original principal amount of $2,000,080. On request, Tokai agreed to subordinate its position to both of Rivera's deeds of trust in return for the payment of $2,048,154. Tokai executed subordination agreements on October 23, 1990 and thereafter received payment through an escrow at Gateway Title Co. There is no evidence in the record as to when the escrow closed or the amount, if any, remaining due to Tokai Credit Corporation. The deed of trust and the subordination agreement relating to the Orange County property were recorded on November 7, 1990. However, neither the deed of trust nor the subordination agreement for the Riverside County property was ever recorded. Marino and Jim Marino Imports, Inc. received the balance of the loan proceeds from Rivera in the amount of $448,208.91.

Rivera, through attorneys provided by his title company, filed an adversary proceeding seeking a declaration by the court that Marino had actual, constructive, and inquiry notice of Rivera's interest in the Riverside property and therefore could not stand in the shoes of a bona fide purchaser to avoid Rivera's trust deed on the Riverside County property. The complaint also sought a declaration that, by the principle of equitable subrogation, Rivera enjoyed the priorities of Tokai's encumbrances. (The "Rivera action.") The Marinos filed a separate adversary proceeding to avoid and recover preferential and fraudulent transfers, which included avoidance of both the Orange County and the Riverside County deeds of trust. (The "Marino action.") In this matter, Rivera was defended by his own counsel rather than the title company's attorneys.

Because the two adversary proceedings involved the same transaction and the same litigants, the court ordered them consolidated for trial. The Joint Pre–Trial Order for the consolidated adversary proceedings included among the issues to be determined:

1. Whether the Marinos have the status of a Bankruptcy Code § 544(a)(3) bona fide purchaser without notice, actual or constructive, of the interest of Rivera in the property.

. . . .

8. Whether the unrecorded interest asserted by Rivera and the Rivera Trust in the Riverside Property is avoidable pursuant to 11 U.S.C. §§ 544, 547, 548, 549, 550.

. . . .

11. Whether the Marinos' transfer of an interest in the Orange Property to Rivera on November 7, 1990 constituted a preferential transfer avoidable and recoverable, pursuant to 11 U.S.C. § 547 and 550.

The Order also included as an undisputed fact that the date of the loan was October 24, 1990.

On the eve of trial, Rivera, through his counsel in the Marino action, moved to amend the Pre–Trial Order so that the undisputed facts would reflect that, while the promissory note was dated October 24, 1990, the escrow closed in November 1990. Counsel sought to introduce the original checks issued by Gateway Title, dated November 7, 1990, as evidence in support of amendment of the Pre–Trial Order. The court denied the motion and disallowed the introduction of any evidence by Rivera in the Marino action as a sanction for repeated noncompliance with the court's pre-trial orders.

At trial, evidence was taken separately for both adversary proceedings in an attempt to maintain a clear record. With respect to the Rivera action, the parties submitted the matter on the pleadings. In the Marino action, the Marinos presented evidence, while Rivera was precluded from admitting evidence as a result of the sanction.

Pertinent to the issues in this appeal, in the Marino action the court found that the deeds of trust were intended to be contemporaneous exchanges for new value, and that in fact they were substantially contemporaneous. The court concluded that the deeds of trust were not avoidable as preferences because they were shielded by the contemporaneous exchange exception of § 547(c)(1). In finding that § 547(c)(1) applied, the court found that the 14–day period between the funding of the loan and the perfection of the

deeds of trust was substantially contemporaneous in fact as required by § 547(c)(1)(B). The court also held that the deeds of trust were not avoidable under § 547(b) because the transfers were made outside of the 90–day preference period and because Rivera was not an "insider." While the court's oral ruling referred only to the Orange County deed of trust, the written findings of fact and conclusions of law reflect that the court found the defense applicable to both deeds of trust:

> Collectively, the Orange Deed of Trust and the Riverside Deed of Trust will hereinafter be referred to as the "Lien Transfers."
>
> . . . .
>
> The . . . Lien Transfers were intended by the Marinos and Rivera to be a contemporaneous exchange for new value. . . . The Loan and Lien Transfers constituted a substantially contemporaneous exchange.

The court also found that both transfers were made on November 7, 1990, the date of recordation of the Orange County deed of trust and subordination agreement.

In the Rivera action, the court held that the Marinos could not stand in the shoes of a bona fide purchaser under § 544(a)(3) because a prospective bona fide purchaser of the Riverside County property would have inquired into the status of the Tokai note and discovered the November 7, 1990 payment, the subordination agreement and the existence of Rivera's deed of trust. This would provide constructive notice sufficient to defeat a subsequent purchaser asserting the status of a bona fide purchaser. The result was that Rivera's Riverside County deed of trust could not be avoided under § 544(a)(3).

Although the adversary proceedings were consolidated at the trial level, they did not remain consolidated for purposes of the appeals. Rivera objected to Bankruptcy Appellate Panel jurisdiction in the Rivera action and that appeal was referred to the United States District Court for the Central District of California, which affirmed the bankruptcy court's decision. Thereafter, on April 23, 1994, the case converted to chapter 7. Carolyn A. Dye, as trustee, appealed the District Court's decision to the Ninth Circuit Court of Appeals. Before the court reached a decision, the trustee and Rivera entered into a compromise which provided that Rivera

would pay the trustee $20,000 in exchange for a dismissal with prejudice and further that the settlement of the appeal of the Rivera action would have no effect on the pending appeal of the Marino action.

Before the panel is the appeal of the Marino action, in which the bankruptcy court denied the trustee's complaint to avoid as preferential the transfer of the deeds of trust on the Orange County and Riverside County properties.

## II. ISSUES

The threshold issue we must determine in this appeal is whether res judicata bars examination of the validity of Rivera's Riverside County deed of trust by virtue of the settled appeal in the Rivera action. Resolution of this issue affects whether we may examine the merits of the trustee's appeal. Next we must determine whether the record supports the finding that a bona fide purchaser of the Riverside County property would have constructive notice of Rivera's deed of trust as of November 7, 1990. If the record does not support this finding, then the date of transfer for purposes of § 547(c)(1) analysis is deemed to be May 21, 1991, the date the bankruptcy was filed, pursuant to § 547(e)(2)(C)(i).

The third issue is whether the bankruptcy court properly determined that perfection of the deeds of trust on November 7, 1990 was substantially contemporaneous with the loan of October 24, 1990. If not, the delay in perfection may lead to the conclusion that the deeds of trust were given to secure an antecedent debt. Resolution of this issue turns on whether the 14–day gap between the execution of the promissory note and the perfection of the deeds of trust satisfies the "substantially contemporaneous in fact" prong of the defense of § 547(c)(1)(B).

Finally, appellant questions whether the bankruptcy court properly determined that Rivera was not an "insider" for purposes of the preference analysis. Because of the result we reach, it is not necessary to address this issue.

## III. STANDARD OF REVIEW

■ Issues of res judicata and collateral estoppel are reviewed *de novo*. *A & A Concrete v. White Mountain Apache Tribe,* 781 F.2d 1411, 1414 (9th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986). *De novo* review allows us to consider the matter anew, as if it had not been heard before and as if no prior decision had been made. *In re Carolina Triangle Limited Partnership,* 166 B.R. 411, 414 (9th Cir. BAP 1994).

■ The bankruptcy court's findings that a bona fide purchaser would have constructive notice of Rivera's Riverside County deed of trust and that the recording of the deeds of trust was substantially contemporaneous with the loan are questions of fact. *In re Weisman,* 5 F.3d 417, 421 (9th Cir.1993) (constructive notice); *In re Lewellyn & Co., Inc.,* 929 F.2d 424, 427 (8th Cir.1991) (contemporaneous exchange). On these issues we review the bankruptcy court's findings of fact for clear error, and will not reverse the court unless we are "left with the definite and firm conviction that the bankruptcy court made a mistake." *In re Wolverton Assoc.,* 909 F.2d 1286, 1296 (9th Cir.1990).

## IV. DISCUSSION

1. *Res Judicata does not bar examination of the preference issue with respect to the Riverside County property.*

■ The doctrine of res judicata prevents the relitigation of a claim tried and decided in a previous action involving the same parties or their privies, including "all grounds for recovery which could have been asserted, whether they were or not...." *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992). The issues to consider in determining whether successive lawsuits involve the same cause of action are whether: "1) rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; 2) ... substantially the same evidence is presented in the two actions; 3) ... the two suits involve infringement of the same right; and 4) ... the two suits arise out of the same transactional nucleus of facts." *Id.*

■ Of the factors relevant to determining whether res judicata applies, the only analysis favoring Rivera's position is that the two appeals arose from the "same transactional nucleus of facts." Conversely, several factors weigh in favor of a determination that res judicata does not bar examination of the preference issue. The most compelling factor is that the rights or interests established in the settled Rivera action are neither destroyed nor impaired by prosecution of this appeal. This is because the two suits did not involve infringement of the same rights or interests. The Rivera action sought only a declaration as to Marino's rights under § 544 on the Riverside County property, and did not raise the claim of avoidability of the deeds of trust as preferences. Because Rivera's lawsuit was limited to the § 544 issue, the trustee was not in a position to pursue the preference issue in that complaint. The judgment entered in the Rivera action did not include findings of fact and conclusions of law on the preference claim, which meant that an appeal could not lie on that issue before either the United States District Court or the Ninth Circuit Court of Appeals. Only the judgment in the Marino action included findings of fact and conclusions of law regarding the preference issue.

Additionally, the evidence presented in the consolidated adversary proceedings was kept separate for the purpose of maintaining a clear record and the separate identity of each case. The Marinos presented no evidence in the Rivera action because they felt that the § 544 issue was strictly a legal determination. In the Marino action, however, the Marinos submitted evidence supporting their preference argument. The segregation of evidence emphasizes that the cases were based on discrete theories, although arising within the same transactional nucleus of facts.

Further, in other circuits, the intention of the parties is a dominant consideration. *See Hughes v. Santa Fe Int'l. Corp.,* 847 F.2d 239, 241 (5th Cir.1988) (finding consent judgments will be given preclusive effect if the parties manifest such an intention); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987) ("[T]he central inquiry in determining the preclusive effect of a consent judgment is the intention of the parties as manifested in the judgment or evidence."); *Balbirer v. Austin,* 790 F.2d 1524 (11th Cir.1986) (holding that

where there is an indication in the consent judgment that res judicata or collateral estoppel does not apply, the consent judgment will have no preclusive effect); 1B Jeremy C. Moore, et al., *Moore's Federal Practice,* ¶.444[3] at 613–14 (2d ed. 1995). The language of the settlement agreement makes clear that the parties did not intend for the settlement of the Rivera action to preclude this appeal as it states that the compromise and stipulation of the Rivera action would not modify or impair either party's rights in this appeal.

The result of this analysis is that res judicata does not preclude this panel from examining whether a bona fide purchaser would have constructive notice of Rivera's deed of trust despite the fact that neither the Riverside County deed of trust nor the Tokai subordination agreement was recorded before the filing of the bankruptcy case.

2. *The record supports the court's conclusion that constructive notice bars avoidance of Rivera's Riverside County deed of trust.*

While the court's oral ruling in the Marino action only refers to the Orange County deed of trust, the findings of fact and conclusions of law state that "[t]he Lien Transfers effected a transfer of the Marinos' property on November 7, 1990." Because "Lien Transfers" refers to both deeds of trust, we infer that the court concluded that there was constructive notice of Rivera's Riverside County deed of trust as of this date. While the findings of fact and conclusions of law in the Marino action do not specifically address the constructive notice issue, it may be inferred that the basis for the court's finding that there was constructive notice in this action is the same as its finding of constructive notice in the Rivera action and that "any prospective bona fide purchaser would upon reasonable inquiry have been apprised of the terms of the Tokai Note, including the endorsement thereon expressly referring to the Loan and the . . . Riverside Deed of Trust."

State law determines whether a bona fide purchaser has constructive notice. *In re*

*Marino,* 813 F.2d 1562, 1565 (9th Cir.1987). Under California law, an unrecorded instrument is valid between the holder of the instrument and the parties who have notice of it. *Cal.Civ.Code* § 1217 (Deering 1990). Regarding sufficiency of notice, the statute provides:

> Every person who has actual notice of circumstances sufficient to put a prudent [purchaser] upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.

*Cal.Civ.Code* § 19 (Deering 1990). A "'prudent purchaser' describes someone who is shrewd in the management of practical affairs and whose conduct is marked by wisdom, judiciousness, or circumspection." *In re Weisman,* 5 F.3d 417, 420 (9th Cir.1993).

■ Turning to the record available in this appeal, the stipulated facts in the Joint Pre–Trial Order provide for both the existence of the Tokai deed of trust and the approximate balance of the Tokai note at $2.048 million, which was the amount of the payment made on the note. Given the existence of the note and the large balance remaining, it is reasonable to conclude that a prudent purchaser would have inquired into the status of the Tokai note before becoming a junior lienholder on the Riverside County property. This inquiry would have revealed the existence of Rivera's Riverside County deed of trust and the fact that it was in first position, ahead of the Tokai note. The court did not commit clear error in concluding that a bona fide purchaser would have constructive notice of Rivera's Riverside County deed of trust.

3. *The deeds of trust were transferred as part of a contemporaneous exchange for new value.*

Among the issues to be determined at trial was whether either of Rivera's deeds of trust could be avoided under § 547. Because the Joint Pre–Trial Order incorporates § 547 in its entirety, the contemporaneous exchange defense of § 547(c)(1) [2] was properly before the court.

**2.** Section 547(c)(1) provides that the trustee may not avoid a transfer to the extent that the transfer was:

> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made

■ As the party asserting the contemporaneous exchange defense, Rivera has the burden of proving that the parties intended the transfer to be a contemporaneous exchange for new value, that the exchange was in fact contemporaneous, and that new value was given. 11 U.S.C. § 547(g); *In re E.R. Fegert, Inc.,* 88 B.R. 258, 259 (9th Cir. BAP 1988), *aff'd,* 887 F.2d 955 (9th Cir.1989). It is undisputed that Rivera gave new value to the Marinos, and the record establishes that the parties intended the transaction to be substantially contemporaneous.[3] The record further establishes that the promissory note was executed on October 24, 1990, while the date when constructive notice of both deeds of trust arose was determined to be November 7, 1990. The question remains then whether the court properly found the recordation of the deeds of trust as of November 7 was substantially contemporaneous with the execution of the note.

■ There is a split of authority among federal courts regarding whether a non-purchase money security interest that is perfected more than ten days after the date of transfer can be considered substantially contemporaneous in fact. Neither the Ninth Circuit nor the Bankruptcy Appellate Panel has addressed this issue.

One line of cases follows *In re Arnett,* 731 F.2d 358, 364 (6th Cir.1984), in which the Sixth Circuit held that "[t]he applicability of section 547(c)(1) to delayed perfection of security interests is ... limited to 10 days." The rationale for this holding is that Congress had already balanced competing interests and determined that 10 days was an appropriate limit:

> One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of "secret liens" by invalidating all

transfers occurring within 90 days prior to the filing of the petitions. Thus, creditors are discouraged from waiting until the debtor's financial troubles become all-too-manifest before recording security interests. Section 547(e)(2)(A) and (B) reflect this concern by providing that transfer of a security interest relates back to the date of the underlying transaction if perfection occurs no more than 10 days afterwards; if perfection occurs more than 10 days later, the transfer is deemed to occur at the date of perfection.

*Id.* at 363; *accord In re W.T. Vick Lumber Co., Inc.,* 179 B.R. 283, 291 (Bankr.N.D.Ala. 1995); *In re Phillips,* 103 B.R. 893, 895 (Bankr.S.D.Ohio 1989); *In re Chicora Group,* 99 B.R. 715, 717 (Bankr.D.S.C.1988); *In re Northwest Erection, Inc.,* 56 B.R. 612, 615 (Bankr.D.Mt.1986). The *Arnett* court also noted that evidentiary problems would arise if a strict ten-day limit were not applied:

> [S]uch a stance invites litigation over the question when in fact a transfer is "substantially contemporaneous." There are no objective standards for determining this fact and the courts are having great difficulty in determining the issue, creating much uncertainty in the law.

*Arnett,* 731 F.2d at 363 (citing *In re Vance,* 22 B.R. 26, 28 (Bankr.D.Idaho 1982), *aff'd,* 721 F.2d 259 (9th Cir.1983) (holding that the § 547(c)(1) contemporaneous exchange exception was not applicable to purchase money security interests)).

The second line of cases, which we believe is the better reasoned authority, applies a more flexible standard that requires an inquiry into all of the circumstances of the case. The Seventh Circuit specifically declined to follow *Arnett,* holding:

---

to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

**3.** The undisputed facts from the Pre–Trial Order describe the loan transaction as follows:

> 5. The Loan was made in accordance with the terms of a Promissory Note, dated October 1990, and two deeds of trust....
> a. a Deed of Trust (the "Orange Deed of Trust").... was executed by the Marinos ... to secure repayment of the October 1990

loan, and was made on account of that loan; and

> b. a Deed of Trust (the "Riverside Deed of Trust")....

Further, the statement of the trustee's counsel on the record, although terse, does not contest that the transaction was intended to be substantially contemporaneous:

> THE COURT: Well, I don't know. [The transfer] was certainly intended to be [substantially contemporaneous], you would agree, I assume.
> MR. FRANKE: [trustee's attorney]: I would.

The focus of the "in fact" prong of the [§ 547(c)(1) analysis] is obviously on the temporal proximity between the issuance of credit and transfer of assets to secure that credit. However, the modifier "substantial" makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intentions of the parties, possible risk of fraud) surrounding the allegedly preferential transfer.

*Pine Top Insurance Co. v. Bank of America National Trust and Savings Assoc.*, 969 F.2d 321, 328 (7th Cir.1992) (footnote omitted); accord *In re Telecash Indus., Inc.*, 104 B.R. 401, 404 (Bankr.D.Utah 1989); *In re Air Vermont Inc.*, 45 B.R. 817, 820 (D.Vt.1984); *In re Lyon*, 35 B.R. 759, 762 (Bankr.D.Kan. 1982); *In re Martella*, 22 B.R. 649, 653 (Bankr.D.Colo.1982); *In re Burnette*, 14 B.R. 795, 803 (Bankr.E.D.Tenn.1981). These cases suggest that where there are circumstances beyond the secured creditor's control that caused a delay in perfection, avoiding the transfer as preferential would be inappropriate. The bankruptcy court's ruling followed this more flexible approach.

The panel makes the determination whether the ten day perfection requirements of § 547(e)(2) apply to the "substantially contemporaneous in fact" requirement of § 547(c)(1)(B) by reference to general principles of statutory construction. In construing legislation, the court's primary objective should be to give effect to the legislative intent. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *In re Enserv Co., Inc.*, 64 B.R. 519, 520 (9th Cir. BAP 1986), *aff'd*, 813 F.2d 1230 (9th Cir.1987). The legislative intent may be discerned either from the clear language of the statute itself or from available legislative history that clearly reveals this intent. However, where the language of the statute fails to reveal the legislative intent, courts are required to delve beyond the literal language and to construe the specific provision in the context of the entire statutory scheme. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). In such instances, the court must " 'look to the provisions of the whole law, and to its object and policy....' " *Webster v. Reproductive Health Services*, 492 U.S. 490, 514, 109 S.Ct. 3040, 3054, 106 L.Ed.2d 410 (1989) (quoting *Philbrook v. Glodgett*, 421 U.S. at 713, 95 S.Ct. at 1898, which is also quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1849)).

Neither the language of the statute nor the legislative history of § 547(c)(1) clearly reflects Congress' intent in applying the statute to deeds of trust and security interests.[4] The legislative history notes that 30 days is an appropriate amount of time to cash a negotiable instrument. Security interests, however, are subject to different commercially acceptable practices. The differing standards for negotiable instruments and security interests were noted by the court in *Arnett*, which cited the special treatment given security interests in § 547(c)(3) and § 547(e)(2) as evidence of Congressional intent to differentiate the two types of transactions. *Arnett*, 731 F.2d at 362. Given this specific treatment for the relation back of security interests, the court in *Arnett* concluded that the 30–day grace period for cashing a negotiable instrument did not apply to security interests. We also recognize that different commercially acceptable practices are applicable to negotiable instruments and security interests and that the 30–day grace period in the Uniform Commercial Code for negotiable instruments is not an appropriate time period for application to security interests.

---

4. The Comment to section (c)(1) is limited to negotiable instruments and provides, in its entirety:

> The first exception is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous", and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6329.

Because legislative intent remains unclear, we turn next to the statutory context of § 547(c)(1). The purpose of the preference statute embodied in § 547 is twofold:

First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy.... Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution of creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 178, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6138. The preference section discourages dismemberment of the debtor and promotes equality of treatment between creditors. The concept of a voidable preference discourages "paying or securing a pre-existing debt of the person preferred." *Dean v. Davis,* 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917).

The underlying rationale behind the contemporaneous exchange exception "is a simple one, excepting a transfer that is really not on account of an antecedent debt," but is instead a substantially contemporaneous exchange for new value. 4 *Collier on Bankruptcy,* ¶ 547.09, at 547–49 and 50 (15th ed. 1995) (quoting Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand. L.Rev. 713 (1985)). The contemporaneous exchange exception thus protects creditors who give new value to the debtor and are not "racing to the courthouse to dismember the debtor."

The concerns noted by the court in *Arnett* ignore the underlying purposes of the exception. While there will be litigation involving what is substantially contemporaneous in fact, a court need only look to the facts and circumstances of the case and determine whether the delay in perfection was reasonable. The concern over lack of an objective standard is illusory, given that facts and circumstances will differ with each particular case. The concern over secret liens should also be allayed by a court's examination and consideration of the reasonableness of a delay in perfection. Where there is a reasonable and plausible explanation for the delay, there should be no concern that a creditor was recording a secret lien in anticipation of a bankruptcy.

The analysis of the facts and circumstances of this case is similar to that of the Seventh Circuit in *Pine Top Insurance Co. v. Bank of America National Trust and Savings Assoc.,* supporting our adoption of the more flexible approach:

The Bank [Rivera] was a new creditor, offering new capital to a struggling debtor, and it conditioned that new credit on the provision of security; a delay of three weeks [14 days] in transferring that security did not defeat the legitimate expectations of Pine Top's [the Marinos'] other creditors because the net available assets were not diminished by the Bank's [Rivera's] entrance into the pool of creditors.

*Pine Top,* 969 F.2d at 329 (emphasis in original). Rivera's loan to the Marinos was intended to be substantially contemporaneous with the granting of security, and the deed of trust on the Orange County property was perfected 14 days later by Gateway Title Company. Rivera performed all acts that were required of him in making the loan and had no reason to believe that the deeds of trust would not be recorded within the ten-day grace period. The fact that the checks were issued and the Orange County deed of trust was recorded 14 days later than execution of the promissory note was beyond his control. To avoid these transfers on the basis that they were perfected outside of the ten-day grace period would contradict the policy underlying both the preference statute and the substantially contemporaneous exchange defense.

We hold then that the view that best comports with the policies of § 547 is that when the delayed perfection of a security interest can be satisfactorily explained, the transfer may still be characterized as substantially contemporaneous in fact. Given the purposes of the preference statute and the contemporaneous exchange exception, we find that a flexible standard best comports with the policies of § 547, and adopt it with respect to the requirement of § 547(c)(1)(B) that a transfer be substantially contempora-

**916**

neous in fact. Instead of applying the strict ten-day limit enumerated in § 547(e)(2), an inquiry into the facts and circumstances of the particular transaction should be made to determine whether a transfer was substantially contemporaneous in fact.

While the bankruptcy court made no specific findings that explain the delay in recordation, factors that are particularly compelling in this panel's examination of the issue include that the parties clearly intended that the transfer be contemporaneous and that the 14-day delay was not significantly more that the ten-day window provided in § 547(e)(2). Unforeseen circumstances not attributable to Rivera include the apparent delay by Gateway Title Company in closing the escrow and recording the Orange County deed of trust and the complete failure to record the Riverside County deed of trust. Finally, that Rivera was neither dilatory nor negligent in his actions is significant. After considering these facts, we are not "left with the definite and firm conviction that the bankruptcy court made a mistake," and affirm the court's determination that the 14-day delay was substantially contemporaneous in fact. *See In re Wolverton Assoc.,* 909 F.2d 1286, 1296 (9th Cir.1990).

*4. Review of the bankruptcy court's finding that Rivera was not an insider is unnecessary.*

The panel's determination that the granting of the two deeds of trust were substantially contemporaneous exchanges for new value under § 547(c)(1) supports the bankruptcy court's holding that the transfers were not preferential. Review of the finding that Rivera was not an insider is therefore unnecessary.

### CONCLUSION

The bankruptcy court was correct in finding that a bona fide purchaser would have constructive notice of Rivera's Riverside County deed of trust as of November 7, 1990. The bankruptcy court was also correct in applying the contemporaneous exchange defense of § 547(c)(1) to preclude avoidance of

the deeds of trust. The judgment of the bankruptcy court is AFFIRMED.