**In re Takk Harold KERST, Debtor.**

**M. Stephen Peters, as Chapter 7 Trustee of the bankruptcy estate of Takk Harold Kerst, Plaintiff,**

**v.**

**Wray State Bank, Defendant.**

**Bankruptcy No. 05–28708–HRT.
Adversary No. 05–1807 HRT.**

United States Bankruptcy Court,
D. Colorado.

Aug. 8, 2006.

Theodore P. Demos, Denver, CO, for Debtor.

**ORDER**

HOWARD R. TALLMAN, Bankruptcy Judge.

This matter came before the Court on a complaint (the "Complaint") filed by the Chapter 7 Trustee, Plaintiff M. Stephen Peters (the "Plaintiff") to avoid and recover a transfer made to Wray State Bank (the "Defendant") by Takk Harold Kerst, the debtor herein (the "Debtor"). The Defendant pled in its answer that the

transfer should be protected by the earmarking doctrine or that it was a substantially contemporaneous exchange for new value. A trial was held on May 8, 2006.

## FACTS

The Debtor owns a 2003 Volkswagen Jetta, which was collateral for a loan from VW Credit. The Debtor also had an outstanding unsecured loan from the Defendant in the amount of $5,070.00 (the "First Loan"). The Debtor decided to refinance the vehicle loan with the Defendant so that he could consolidate the First Loan with his car loan. In order to accomplish this, the Debtor and the Defendant entered into a security agreement dated May 6, 2005.[1] On the same day, the Defendant deposited $13,094.50[2] into the Debtor's checking account. This sum included the amount of the outstanding VW Credit loan plus the amount necessary to satisfy the First Loan. Four days later, on May 10, 2005, the Debtor wrote and sent a check in the amount of $9,907.89[3] to VW Credit for the full amount outstanding on the car loan. Although VW Credit cashed the check on May 13, 2005, it did not return the vehicle title with a lien release to the Debtor until June 20, 2005. The Debtor brought the title and lien release to the Defendant on the same day that he received it, and the

Defendant immediately brought them to the county clerk and recorder's office. The Defendant's lien was recorded on June 22, 2005, 47 days after the security agreement was executed.

The Debtor filed his bankruptcy petition on July 28, 2005.

The parties stipulated that the value of the vehicle is $8,673.08.[4]

At trial, the Defendant's loan officer, Terri Bliven, testified that she viewed the pay-off of the First Loan and the refinancing of the car as a single transaction. Alan Wilson, the Defendant's president, testified that the Defendant deposited $13,094.50 into the Debtor's account so that he could write a personal check to VW Credit. In his experience, that is the fastest way to obtain a lien release from a vehicle financer. Mr. Wilson further testified that while the Defendant would not immediately be able to perfect its lien, it always treated the transaction as a secured loan.

## ISSUES

Does the doctrine of "earmarking" protect the Defendant's security interest in the vehicle from avoidance pursuant

---

1. No evidence of a promissory note was presented at the trial.

2. It is unclear how the Defendant received payment for the First Loan.

3. Since the amount of the First Loan was $5,070.00, the Debtor only netted $8,024.00 from the refinancing. Therefore, he would have had to use additional funds to pay VW Credit the full amount due. This amount may have been a preferential transfer to VW Credit, but since it is not a party to this action, that is a moot point.

4. It should be noted that under Colorado exemption laws, the Debtor could have exempted up to $6,000 of equity in the vehicle, see

CRS § 13–54–102(1)(j)(II), because the Debtor is considered disabled under the terms of said statute. One can only speculate as to why the Debtor failed to claim this exemption but it could be that he believed that the vehicle lacked any equity. Such a belief is not without merit and leads the Court to ponder the necessity of taking a specialized vehicle away from a person confined to a wheelchair when the Bankruptcy Code, through the use of state exemption laws, clearly aims to shield such property. If the Plaintiff were to prevail, the lien against the vehicle would be avoided and preserved for the benefit of the estate empowering him to sell the vehicle.

to section 547 of Title 11 of the United States Code?[5]

Was the perfecting of the Defendant's security interest in the vehicle a substantially contemporaneous exchange for new value such that it is shielded from avoidance by § 547(c)(1) of the Bankruptcy Code?

## DISCUSSION

### A. The Doctrine of Earmarking

 The Defendant argued at trial that the transfer should not be subject to avoidance based on the judicially created doctrine of earmarking. This doctrine dictates that in a situation where a co-maker or guarantor, acting as a surety, pays a debt on behalf of the debtor, the payment does not come from the debtor and therefore does not decrease the estate. The policy supporting the doctrine is that if the transfer on behalf of the debtor to the lender is avoided as a preference, the lender would be able to recover again from the co-maker or guarantor, thus subjecting that party to a double payment. The earmarking doctrine protects such co-makers from the injustice of a double recovery. Generally, the elements necessary for the earmarking doctrine to apply are (i) an agreement between the debtor and the payor for the payment of the debt; (ii) performance of that agreement; and (iii) payment not deplete the debtor's estate. *See McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d 561, 565 (8th Cir. 1988).

Many courts have extended this doctrine beyond the co-maker situation to include payments made by a new creditor to the original creditor. *See Peoples Bank and Trust Co. v. Burns*, 95 Fed.Appx. 801, 804 (6th Cir.2004); and *Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.)*, 223 F.3d 1004, 1008–1009 (9th Cir.2000). However, this extension has been subject to attack. In *McCuskey v. Nat'l Bank (In re Bohlen Enters., Ltd.)*, 859 F.2d at 565, the Eighth Circuit stated:

> As a matter of first impression, it would seem that the doctrine should not have been so extended. The equities in favor of the guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself. Yet the courts, without much detailed analysis of the differences, have routinely made the extension to non-guarantors.[6]

The Tenth Circuit has not spoken to this issue, but the Bankruptcy Appellate Panel ("BAP") addressed the matter, albeit in dicta, in *Manchester v. First Bank and Trust Co. (In re Moses)*, 256 B.R. 641 (10th Cir. BAP 2000). The BAP stated that in the context of a new creditor, there is no opportunity for the original creditor to make a second recovery from the new creditor because there is no contractual relationship between the two. Citing *Bohlen* with favor, the BAP conducted a detailed analysis of earmarking and its extension beyond the co-debtor arena in *Moses* and found that the grounds for extension were dubious at best. *Id* at 646.

 While the BAP's discussion of earmarking in *Moses* was dicta in that it concluded that earmarking did not apply to the facts of the case, *see* 256 B.R. at 649–650, the Court is persuaded by its reasoning. Earmarking is not provided for in the Bankruptcy Code but is inher-

---

**5.** 11 U.S.C. § 101 et seq. shall be referred to herein after as the "Bankruptcy Code."

**6.** While the Eighth Circuit makes this point, its holding does just the opposite and finds in favor of extending the doctrine.

ently necessary to protect a co-debtor. The potential for manifest injustice simply is absent without a co-debtor. Earmarking is a judicially created doctrine with the express purpose of preventing a party from having to pay the same debt twice. As such, it should not be extended any further than necessary to remedy that specific problem. Any further extension of the doctrine might be viewed by some as unwarranted judicial activism.

■ In this case, the Defendant asks the Court to take the doctrine even one step further by using it to shield not the payment to the original creditor, but the perfection of the lien by the new creditor. Even courts that accept the extension of earmarking to a non-co-debtor situation are reluctant to go that far. The Bankruptcy Court for the Southern District of Illinois discussed this situation in a case with the same fact pattern as the case at hand in *Vieira v. Anna National Bank (In re Messamore)* 250 B.R. 913 (Bankr. S.D.Ill.2000).

> Here, it is not the transfer of funds to the debtors' original creditor, Green Point, that is at issue, but the transfer that occurred when the new creditor, Anna Bank, perfected its lien on the debtors' mobile home more than 10 days after execution of the parties' loan agreement. . . .
>
> . . . Although the debtors' transfer to Anna Bank arose in the context of a refinancing arrangement, it did not involve the payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer. The transfer to Anna Bank that occurred upon perfection of its lien was separate and distinct

from the transfer that occurred when Green Point was paid with borrowed funds, and this transfer was clearly a transfer of the debtors' interest in property, as it depended on the debtors' grant of a security interest to Anna Bank. The earmarking doctrine, therefore, is inapplicable in the present case to shield the debtors' transfer to Anna Bank from avoidance as a preference.

In so ruling, the Court declines to follow the reasoning of the *Heitkamp*[7] and *Ward*[8] cases, cited by Anna Bank in support of its position. Like the present case, *Heitkamp* and *Ward* each involved a preference action against a new creditor who supplied funds to pay a previous creditor but who neglected to timely perfect its security interest in the debtor's property. The court in each case found the earmarking doctrine applicable as a defense for the new creditor. However, the court's analysis failed to distinguish between the transfer of borrowed funds to the original creditor and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property. The earmarking doctrine, while appropriate to prevent avoidance of the transfer of borrowed funds to the original creditor, was wrongly invoked as a defense for the new creditor's tardy perfection.

The *Heitkamp* and *Ward* courts' rulings are more understandable when viewed, not as an application of the earmarking doctrine, but as a determination that the new creditor's perfection was sufficiently "contemporaneous" with the parties' loan transaction to be excused from avoidance under § 547(c)(1). *See id.* The "contemporaneous exchange" defense—which excepts an otherwise preferential transfer from avoid-

---

**7.** *In re Heitkamp,* 137 F.3d 1087 (8th Cir. 1998).

**8.** *In re Ward,* 230 B.R. 115 (8th Cir. BAP 1999).

ance where (1) the transfer was intended to be a "contemporaneous exchange for new value given to the debtor" and (2) the exchange was, in fact, "substantially contemporaneous," *see* 11 U.S.C. § 547(c)(1)—provides relief for a secured creditor who fails to timely perfect. *See In re Dorholt, Inc.*, 239 B.R. 521, 524–526 (8th Cir. BAP 1999); *In re Stephens*, 242 B.R. 508, 510 (D.Kan. 1999).

*Id.* at 917–919.—

Based on the foregoing discussion, this Court is compelled to hold that the earmarking doctrine does not protect the Defendant from avoidance by the Plaintiff. However, as in *Messamore*, the more proper analysis for this case is whether the transaction was a substantially contemporaneous exchange for new value.

### B. The "Contemporaneous Exchange for New Value" Defense

█ Section 547(c) of the Bankruptcy Code provides certain defenses to preference actions. Subsection (c)(1) states:

(c) The Plaintiff may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange . . .

11 U.S.C. § 547(c).

#### 1. Was New Value Received?

Section 547(a)(2) defines "new value" as follows:

"new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the Plaintiff under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

11 U.S.C. § 547(a)(2).

In this case, there were two aspects of the transaction. First was the refinancing of the Bank Loan. In that instance, the Defendant merely replaced one unsecured loan with another creating a net wash for the estate.[9] There was no money that went in or out of the estate.

The second part of the transaction was the refinancing of the vehicle. In that case, there was clearly new value brought into the estate as the Defendant provided the Debtor with funds to pay-off the existing car loan.

[C]ase law makes clear that a debtor receives money and, thus, "new value" within the meaning of § § 547(a)(2) and 547(c)(1) when an obligation of such debtor to one creditor or group of creditors is satisfied by another creditor who, in return for such satisfaction, receives a transfer of property from such debtor. *See In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1279–1281 (8th Cir.1988); *In re EDC, Inc.*, 930 F.2d 1275, 1282 (7th Cir.1991); *In re Ross*, 1997 WL 331830 at *5 (Bankr.E.D.Pa.1997); *In re Strom*, 46 B.R. 144, 149 (Bankr.E.D.N.C.1985); *In re Amarex, Inc.*, 88 B.R. 362, 365 (W.D.Okla.1988).

---

**9.** Although the new loan from the Defendant is secured while the First Loan was not, the parties stipulated that the value of the vehicle is $8,673.08. Therefore, the portion of the loan attributable to the First Loan, which is $4,420.92, remains unsecured. While that amount is $650 less than the amount of the First Loan, such amount is *de minimis* and does not change the Court's analysis.

*Brown v. General Electric Capital Corp., et al. (In re Foxmeyer Corp.)*, 286 B.R. 546, 565 (Bankr.D.Del.2002). The Court is satisfied that the Defendant provided the Debtor with new value according to the definition in § 547(a)(2).

### 2. Did the Parties Intend for the Transfer to be Contemporaneous?

The application of the first part of the substantially contemporaneous test—what was the parties' intent—is an unadorned factual determination based on the evidence presented at trial. The plain language of the statute is sufficiently clear that little time needs be dedicated to its interpretation.

In this case, the evidence presented at trial established by a preponderance of the evidence that the Debtor and the Defendant intended the transaction to be contemporaneous. The testimony of both the loan officer and the president of the Defendant bank confirms that the parties intended this to be a contemporaneous exchange even though, by necessity, there was a delay in perfection. The actions of the parties support that testimony. Once the Debtor received the funds from the Defendant, within four days he tendered a check to VW Credit in satisfaction of its lien against the vehicle. Then, upon receiving the cleared title from VW Credit, the Debtor brought the title to the Defendant that same day. Without delay, the Defendant submitted the title to the county recorder's office. Based on the foregoing, the Court finds that the parties intended the transfer to be contemporaneous.

### 3. What Constitutes a Substantially Contemporaneous Exchange?

The second part of the substantially contemporaneous test—was the transfer in fact substantially contemporaneous—is not so straight forward. The Bankruptcy Code does not define "substantially contemporaneous" which has led to a great deal of discussion on the matter in the case law. The principal debate is between a narrow interpretation of the rule which limits "substantially contemporaneous" to ten days based on § 547(e)(2)(B), *see Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir.1984), versus a more liberal case-by-case analysis, *see Pine Top Insurance Company v. Bank of America National Trust and Savings Association*, 969 F.2d 321 (7th Cir.1992). It is this Court's opinion, as well as that of most other courts addressing the issue,[10] that the *Pine Top* decision provides a more cogent analysis.

The *Arnett* court based its analysis on the legislative history of the section and an interpretation of the statute that ties "substantially contemporaneous" to when a transfer occurs as controlled by § 547(e)(2)(B). "[I]t is clear that the classic exception to avoidance intended by Congress to be reflected in section 547(c)(1) is the exchange of goods or other 'value' for a check. Such transactions are generally intended to be cash transactions, although some extension of credit is necessarily involved until the check is negotiated." *Arnett*, 731 F.2d at 361. The Sixth Circuit rejected the lower courts' findings that the ten-day limit on the definition of a transfer in § 547(e)(2)(B) was not incorporated into the definition of substantially

---

**10.** *See Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 874 (8th Cir.2000); *Dye v. Rivera (In re Marino)*, 193 B.R. 907 (9th Cir. BAP 1996), *aff'd*, 117 F.3d 1425 (9th Cir. 1997); *Rutledge v. First National Bank of Sallisaw, Oklahoma (In re Carson)*, 119 B.R. 264 (Bankr.E.D.Okla.1990); *Telecash Industries, Inc. v. Universal Assets (In re Telecash Industries)*, 104 B.R. 401, 404 (Bankr.D.Utah 1989); and *Morris v. Chisolm Trail State Bank (In re Stephens)*, 242 B.R. 508 (D.Kan.1999).

contemporaneous. Even though the circuit court acknowledges that the legislative history of § 547(c)(1) indicates that a 30–day delay could be "substantially contemporaneous," it found that "substantially contemporaneous" is confined to 10 days by section 547(e)(2)(B).

The opposing view is best articulated by the Seventh Circuit in the *Pine Top* case. The focus of the "in fact" prong of the *Dean*[11] test is obviously on the temporal proximity between the issuance of credit and transfer of assets to secure that credit. However, the modifier "substantial" makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intentions of the parties, possible risk of fraud) surrounding an allegedly preferential transfer.

*Pine Top,* 969 F.2d at 328. In *Lindquist v. Dorholt (In re Dorholt, Inc.),* the Eighth Circuit goes further and explicitly rejects the *Arnett* court's bright-line rule based on § 547(e)(2)(B)'s ten-day transfer limit.

Most importantly, the plain language of the statute is at odds with the Plaintiff's bright-line test. The statute uses a more elastic term, *substantially* contemporaneous.... Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, § 547(c)(3). It chose a less rigid standard for § 547(c)(1), no doubt because that provision governs a wider variety of loans and credit transactions. We must construe the statute accordingly.

224 F.3d 871, 874 (8th Cir.2000) (emphasis in original)(affirming bankruptcy court decision that a 16–day transaction is substantially contemporaneous). *See also, Dye v. Rivera (In re Marino),* 193 B.R. 907 (9th Cir. BAP 1996), *aff'd,* 117 F.3d 1425 (9th Cir.1997); *Rutledge v. First National Bank of Sallisaw, Oklahoma (In re Carson),* 119 B.R. 264 (Bankr.E.D.Okla.1990); *Telecash Industries, Inc. v. Universal Assets (In re Telecash Industries),* 104 B.R. 401, 404 (Bankr.D.Utah 1989)("This court declines to follow the reasoning of the court of appeals in *Arnett* and does not believe that section 547(e)(2), which prescribes when a transfer occurs for purposes of the preference section, requires *sub silentio* a ten-day limitation in the contemporaneous exchange exception.").

■ The Tenth Circuit has not yet spoken on this issue, but the district court for the District of Kansas has followed *Pine Top* and its progeny. The court in *Morris v. Chisolm Trail State Bank (In re Stephens),* 242 B.R. 508 (D.Kan.1999), cited the Eighth Circuit's opinion in *Dorholt,* stating, "Congress' use of the phrase 'substantially contemporaneous' indicates that a flexible standard was intended rather than a specific time limit." *Id.* at 511. *See also, In re Telecash Industries,* 104 B.R. 401; *In re Carson,* 119 B.R. 264; *General Motors Acceptance Corp. v. Martella (In re Martella),* 22 B.R. 649 (Bankr.D.Colo.1982)(finding that a 44–day delay in perfecting an interest in a motor vehicle was substantially contemporaneous).[12] The most recent Tenth Circuit BAP decision on point does not take sides in the *Pine Top* versus *Arnett* debate, instead finding that the facts on appeal were insufficient to support a finding of a substantially contemporaneous exchange

**11.** *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917)(first case to define the "substantially contemporaneous" defense which was later codified by § 547(c)(1)).

**12.** While the *Martella* case pre-dates the *Arnett* decision, its reasoning is clearly in line with the *Pine Top* line of cases.

under either test. *See Anstine v. Centex Home Equity Company, LLC (In re Pepper)*, 339 B.R. 756 (10th Cir. BAP 2006)(affirming bankruptcy court's finding that perfecting after seven months and 18 days was not substantially contemporaneous).

This Court agrees with the reasoning of the *Stephens* court, and therefore the Seventh Circuit in *Pine Top*, that "Congress' use of the phrase 'substantially contemporaneous' indicates that a flexible standard was intended rather than a specific time limit." *In re Stephens*, 242 B.R. at 511.[13] The question remains of how to apply the case-by-case test in this situation.

*4. Application of the Pine Top Test for "Substantially Contemporaneous"*

█ The *Pine Top* court introduced several factors for the Court to consider in determining whether a transaction is substantially contemporaneous including an "inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intentions of the parties,[14] possible risk of fraud) surrounding an allegedly preferential transfer." *In re Pine Top*, 969 F.2d at 328. In applying these factors, courts have concluded that a wide range of time periods can be considered substantially contemporaneous depending on the circumstances. In *Pine Top*, the court found that 20 days was an acceptable delay for perfection of a security agreement. *Id.* See e.g. *In re Stephens*, 242 B.R. 508 (14 days); *In re Dorholt, Inc.*, 224 F.3d 871 (16 days); *In re Martella*, 22 B.R. 649 (44 days); *In re Marino*, 193 B.R. 907 (14 days); *In re Carson*, 119 B.R. 264 (14 days); *In re Telecash Industries*, 104 B.R. 401 (27 days); *but see In re Pepper*, 339 B.R. 756 (7 months, 18 days is not substantially contemporaneous).

In a variation on the same theme, the Ninth Circuit BAP distinguishes between the time taken to cash a negotiable instrument and that to perfect a security interest based on what is commercially acceptable for each type of transaction. *See In re Marino*, 193 B.R. at 914. Due to the nature of perfecting a security interest, there may be delays which are commercially reasonable for perfection, but would not be commercially reasonable for the negotiation of a check. "We hold then that the view that best comports with the policies of § 547 is that when the delayed perfection of a security interest can be satisfactorily explained, the transfer may still be characterized as a substantially contemporaneous in fact." *Id.* at 915.

---

13. It should be noted that when Congress revised the Bankruptcy Code in 2005, enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), it revised the safe harbor provisions in § 547(c)(3) and (e)(2) but left § 547(c)(1) unchanged. It must be assumed that Congress was aware of the debate over the definition of "substantially contemporaneous" but elected to leave the language as is. If Congress had intended for that period to be a definitive deadline, one can only assume that it would have clarified § 547(c)(1) when revising the rest of § 547. While BAPCPA is not controlling as this case was filed prior to October 17, 2005, it is instructive with respect to congressional intent.

14. It is this Court's view that the inclusion of the parties' intent as one of the factors has resulted in a certain degree of circular reasoning by some courts, i.e., the parties intended the transaction to be contemporaneous; therefore, it was in fact contemporaneous. However, § 547(c)(1)(A) requires that the parties intend to complete a contemporaneous exchange for new value while § 547(c)(1)(B) requires that it be "in fact substantially contemporaneous". 11 U.S.C. § 547(c)(1). In order to avoid this dizzying effect, the Court will confine the application of the parties' intent to the § 547(c)(1)(A) portion of its analysis while examining the temporal aspect of the exchange in its § 547(c)(1)(B) analysis.

In a case that is probably the most analogous to the case at hand, *In re Messamore*, 250 B.R. 913, the bankruptcy court addressed the refinancing of a vehicle. In that case, the original financer took 17 days to release the title; however, the new financer held that title for 50 days before perfecting its security interest. The court found that the new financer, Anna Bank, failed to explain the 50 day delay once the title was cleared by the original financer. *Id.* at 920. Because § 547(g) mandates that the defendant bears the burden of proof for any of the § 547(c) defenses, Anna Bank was obligated to explain the delay. "In the absence of any showing that its delay in perfecting was reasonable or occasioned by factors beyond its control, the Court finds that Anna Bank has failed to carry its burden of proof." *Id.*

This case is notably distinguishable from *Messamore*. The Defendant has satisfactorily explained the reason for the delayed perfection of its security interest in the Debtor's vehicle. The Defendant established that the only significant delay was caused by VW Credit's failure to promptly process the lien release. VW Credit held onto the vehicle title for 38 days following the date on which it cashed the Debtor's check. Since the transfer was completed in 47 days, by subtraction the Defendant only took a total of nine days to complete the work necessary. Furthermore, neither the Defendant nor the Debtor had any means of expediting that process because both lacked leverage against VW Credit. The Court does not know why it took VW Credit so long to issue the lien release, but that fact is immaterial to the discussion. The parties to the transfer did not cause the delay.

Moreover, under Colorado law, the Defendant was prevented from asserting its interest in the vehicle prior to receiving the certificate of title from VW Credit. The only means of perfecting a lien against a vehicle is to note the lien on the certificate of title. *See* C.R.S. § 42–6–120(1). Until the Defendant obtained physical possession of the title, it was helpless to protect itself.

Nine days is considered substantially contemporaneous under even the most rigid bright-line test. The language "substantially contemporaneous" is deftly suited to deal with factual situations just such as this. It is this Court's view that by using a flexible standard, Congress intended to give the Court the discretion to evaluate the details underlying the transaction and rule according to the intent of the preference statute.

### C. This Case Is Not Controlled by the Court's Decision in Baker

In the Defendant's amended answer, it asserts that this Court's decision in *Hepner v. AmeriCredit Financial Services, Inc. (In re Baker)*, 338 B.R. 470 (Bankr. D.Colo.2005), *aff'd by* 345 B.R. 261 (D.Colo.2006), should not be controlling in this case. In *Baker*, the Court found that if a purchase-money security interest is not perfected within 20 days, it is subject to avoidance by the trustee. In that case, the lender had presented its application for a certificate of title and other necessary paperwork to county clerk within the prescribed time, but the county clerk did not complete the filing until after the expiration of the 20–day period. Under Colorado law, the county clerk must first review of title. Then, filing the title by inclusion of the lien in an electronic database is the final event for perfection of a security interest in a vehicle. The delay, though caused by the county clerk, prevented the lender from successfully asserting the "enabling loan" defense provided by § 547(c)(3).

The Court agrees with the Defendant that this case is distinguishable from *Baker* which was decided based on § 547(c)(3):

(c) The Plaintiff may not avoid under this section a transfer—

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was–

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 [15] days after the debtor receives possession of such property.

11 U.S.C. § 547(c)(3). In essence, subsection (c)(3) provides a purchase-money financer with a 20–day window in which to perfect its security interest so that it cannot be avoided by the trustee. In the *Baker* case, the lender provided an enabling loan for the vehicle making subsection (c)(3) the proper defense. In this case, the Defendant refinanced the car for the Debtor making subsection (c)(1) the appropriate argument, not (c)(3).

As discussed above, Congress decided not to include a definitive 20–day time limit for non-purchase-money financing in § 547(c)(1), instead using the more subjective "substantially contemporaneous" test. The difference is logical when the nature of the underlying transaction is evaluated. In an enabling loan, the lender has a greater degree of control over when the borrower takes possession of the goods. Furthermore, a purchase-money security interest often supercedes an existing blanket lien. In order to qualify for such preferential treatment, the financer must act quickly to protect its interest. In a refinancing, however, the borrower, not the lender, already has control of the collateral. Moreover, the new lender is not trumping an existing lender's lien, but rather, is replacing it.

Since the Defendant's loan was a refinancing and not an enabling loan, § 547(c)(1) applies and the Court's opinion in *Baker* does not. Therefore, it is

**ORDERED** that the Court will enter JUDGMENT in favor of the Defendant and against the Plaintiff.

---

**15.** 11 U.S.C. § 547(c)(3) was amended to "30 days" by BAPCPA.