731 F.2d 358
 77 A.L.R.Fed. 1, 10 Collier Bankr.Cas.2d 533,
11 Bankr.Ct.Dec. 1097, Bankr. L. Rep. P 69,839
 In re Burton Lewis ARNETT and Charlotte Arnett, Debtors.
Thomas E. RAY, Trustee, Plaintiff-Appellant,
v.
SECURITY MUTUAL FINANCE CORPORATION; American National Bank
& Trust Company of Chattanooga; and Burton Lewis
Arnett and Charlotte Joan Arnett,
Defendants- Appellees.
 No. 82-5098.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 14, 1983.
Decided April 10, 1984.
 
 1
 Thomas E. Ray, argued, Chattanooga, Tenn., pro se.
 
 
 2
 Andrew F. Bennett, Jr., argued, Cleveland, Tenn., for Sec. Mut.
 
 
 3
 Richard J. McAfee, Lawrence R. Ahern, III, argued, Chattanooga, Tenn., for American Nat. Bank.
 
 
 4
 Before JONES and WELLFORD, Circuit Judges, and MILES, District Judge.*
 
 
 5
 MILES, District Judge.
 
 
 6
 This is an appeal in bankruptcy. Plaintiff, the trustee in bankruptcy, appeals the order of the district court, 17 B.R. 912, affirming the decision of the bankruptcy court declining to set aside as a preferential transfer the security interest held by defendant-appellee Security Mutual Finance Corporation ("Security Mutual") in property of the debtors in bankruptcy and co-defendants-appellees in this proceeding, Burton and Charlotte Arnett.
 
 
 7
 On December 10, 1980, the Arnetts obtained a consolidation loan from Security Mutual, granting to Security Mutual a lien on their 1978 Volkswagen, which was at that time subject to a prior perfected lien held by defendant-appellee American National Bank ("ANB"). The loan obtained from Security Mutual thus included an amount sufficient to pay off the prior security interest. On December 10 or 11, 1980, Security Mutual mailed a check for the outstanding balance of the lien to ANB, requesting ANB to release its lien and forward the certificate of title to the vehicle to Security Mutual. ANB deposited the check on December 19, 1980. Because of the delayed holiday mails and employee absences, however, ANB did not release its lien and forward the certificate of title until January 9, 1981. Upon receiving the release, Security Mutual applied to the State of Tennessee Department of Motor Vehicles to note its lien on the certificate, as required by T.C.A. 55-3-119. The lien was perfected on January 12, 1981, 33 days after the granting of the security interest to Security Mutual.
 
 
 8
 On February 25, 1981, the Arnetts filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. Sec. 701 et seq. The trustee filed suit to set aside Security Mutual's lien on the Volkswagen as a voidable preference under 11 U.S.C. Sec. 547(b). The parties agreed to allow the vehicle to be sold to the debtors for $3,601.47 pending the outcome of this proceeding.
 
 
 9
 The bankruptcy judge ruled that Security Mutual's perfection of its security interest was "substantially contemporaneous" with the loan transaction, notwithstanding the 33-day hiatus and thus, that the transaction fell within the exception to the trustee's avoidance powers found at 11 U.S.C. Sec. 547(c)(1). See, In re Arnett, 13 B.R. 267 (Bkrtcy.E.D.Tenn.1981). The trustee unsuccessfully appealed to the district court, which upheld the bankruptcy court's decision. This appeal followed.
 
 
 10
 The sole issue before this Court is whether a delay of 33 days in perfection of a security interest is a "substantially contemporaneous exchange" under 11 U.S.C. Sec. 547(c)(1), thus excepted from the trustee's avoidance powers. Although the lower courts have been wrestling with this problem for some time, the issue has not yet been addressed by any of the circuit courts of appeals.
 
 
 11
 Section 547(b) of the Bankruptcy Code provides that, except as provided in subsection (c), the trustee may avoid any "transfer of property of the debtor"
 
 
 12
 (1) to or for the benefit of a creditor;
 
 
 13
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 14
 (3) made while the debtor was insolvent;
 
 
 15
 (4) made--
 
 
 16
 (A) on or within 90 days before the date of the filing of the petition; or
 
 
 17
 (B) between 90 days and one year before the date of the petition, if such creditor, at the time of such transfer--
 
 
 18
 (i) was an insider; and
 
 
 19
 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
 
 
 20
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 21
 (A) the case were a case under chapter 7 of this title;
 
 
 22
 (B) the transfer had not been made; and
 
 
 23
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 24
 All five elements are prerequisites to the finding of a voidable preference. Barash v. Public Finance Corp., 658 F.2d 504 (7th Cir.1981). The parties concede that these elements are present. However, Security Mutual and ANB point to the exceptions to the trustee's avoidance powers contained in subsection (c)(1). That subsection provides:
 
 
 25
 (c) The Trustee may not avoid under this section a transfer--
 
 
 26
 (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
 
 
 27
 (B) in fact a substantially contemporaneous exchange;
 
 
 28
 Relying on 11 U.S.C. Secs. 547(c)(3) and 547(e)(2)(A) and (B), the trustee contends that the contemporaneous exchange exception is inapplicable beyond 10 days of creation of Security Mutual's security interest, and thus, that the lien may be avoided. Section 547(c)(3), the so-called "enabling loan" provision, excepts from the trustee's avoidance powers security interests in property acquired by the debtor which are perfected within 10 days of creation. Section 547(e)(2) establishes when the "transfer" of a security interest is deemed to occur:
 
 
 29
 (2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--
 
 
 30
 (A) intended by the debtor and the creditor to or the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;
 
 
 31
 (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days;
 
 
 32
 Not persuaded that the 10-day limit established by the above two sections was incorporated sub silentio into the contemporaneous exchange exception, both the bankruptcy judge and the district judge ruled that "contemporaneity" is a question of fact to be evaluated in light of the parties' intent, the reasons for delay, and the risks of fraud and misrepresentation. The construction given to section 547(c)(1) by the lower courts in this case requires examination of all circumstances surrounding the transaction giving rise to the transfer. Thus, where delayed perfection of a security interest may be satisfactorily explained, and in the absence of dilatoriness or negligence on the part of a transferee, the transfer may still be found "substantially contemporaneous" with the exchange of new value to the debtor, regardless of the lapse of time.
 
 
 33
 Our review is guided by principles of statutory construction. The primary function of the courts in construing legislation is to effectuate the legislative intent. Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Legislative intent may be ascertained from the clear language of the statute itself or from available legislative materials which clearly reveal this intent. Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, analyzing the provision in context with the whole. Kokoszka v. Belford, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). Finally, a construction of one part or provision of a statute which renders another part redundant or superfluous should be rejected; all parts of a statute should, if possible, be given effect. Jarecki v. Searle & Co., 367 U.S. 303, 307-308, 81 S.Ct. 1579, 1582-1583, 6 L.Ed.2d 859 (1961).
 
 
 34
 The legislative history of section 547(c)(1) is sparse. The Comment to the section provides in its entirety as follows:
 
 
 35
 The first exception [Sec. 547(c)(1) ] is for a transfer that was intended by all parties to be a contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. Sec. 3-503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."
 
 
 36
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977) [hereinafter cited as H.R. 595], U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329.
 
 
 37
 In enacting the "contemporaneous exchange" exception, Congress intended to codify decisions under the old bankruptcy act which had held that, when a cash sale was intended, acceptance of a check instead of cash did not change the character of the transaction, so long as the check was cashed within a reasonable period of time. See, e.g., Engstrom v. Wiley, 191 F.2d 684 (9th Cir.1951); Engelkes v. Farmers Co-operative Co., 194 F.Supp. 319 (N.D.Iowa 1961). Some have stated that the provision also codified Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), which held that there was no preference where a loan was intended by both parties to be a secured loan even though the mortgage was not actually executed until seven days after the loan was made. See, e.g., In re Advance Glove Mfg. Co., 25 B.R. 521 (Bkrtcy.E.D.Mich.1982); In re Martella, 22 B.R. 649 (Bkrtcy.D.Colo.1982). Whether Dean v. Davis survived passage of the Bankruptcy Reform Act of 1978, and was codified into section 547(c)(1) has been questioned, however. In re Murray, 27 B.R. 445 (Bkrtcy.M.D.Tenn.1983).
 
 
 38
 Nonetheless, it is clear that the classic exception to avoidance intended by Congress to be reflected in section 547(c)(1) is the exchange of goods or other "value" for a check. Such transactions are generally intended to be cash transactions, although some extension of credit is necessarily involved until the check is negotiated.
 
 
 39
 As Richard Levin, a member of the House Judiciary Committee staff during the drafting of the Bankruptcy Reform Act of 1978, notes, Congress was concerned that these essentially cash transactions not be converted to credit transactions because of delay in depositing the checks intended as cash payments:
 
 
 40
 ... The first exception [the contemporaneous exchange exception] is a simple one, excepting a transfer that is really not on account of an antecedent debt. No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous.
 
 
 41
 "An Introduction to the Trustee's Avoiding Powers," 53 Am.Bankr.L.J. 173, 186 (Spring 1979).
 
 
 42
 Although the legislative history reveals that even a 30-day delay between receipt and negotiation of a check does not preclude a substantially contemporaneous exchange, standard commercial practices appropriate to the transfer of negotiable instruments are not necessarily commensurate with those involving security interests. Congress has given security interests specialized treatment both in sections 547(c)(3) and 547(e)(2). That Congress explicitly enacted a 10-day limitation for the perfection of security interests in order to preserve "relation back", and yet accepted a 30-day period as appropriate to the negotiation of checks indicates an intent to differentiate the two types of "transfers" under the Bankruptcy Reform Act.
 
 
 43
 However, since neither the literal language of section 547(c)(1) nor the legislative history explicitly reveals whether expansion of the classic check transaction reflected in section 541(c)(1) was intended to include transfers of security interests more than 10 days after their creation, consideration of the statutory context is necessary.
 
 
 44
 Two elements are crucial to the establishment of the contemporaneous exchange exception: 1. The parties must intend that the exchange be substantially contemporaneous; 2. the exchange must in fact be substantially contemporaneous. 11 U.S.C. Sec. 547(c)(1); Butz v. Pingel, 17 B.R. 236 (Bkrtcy.S.D.Ohio 1982). There is no dispute here that the parties intended a contemporaneous exchange when the loan was obtained through the granting of a security interest to Security Mutual. Further, the parties do not dispute that the "transfer" here pertinent occurred when Security Mutual perfected its security interest 33 days later. In any case, section 547(e)(2) resolves any doubt by providing that the "transfer" of a security interest not perfected until after 10 days is deemed to occur at the date of perfection. Moreover, under Tennessee law, Security Mutual's lien was invalid until recorded on a certificate of title. T.C.A. 55-3-114, 123, 125, 126. Thus, the key inquiry is whether the exchange was "in fact" substantially contemporaneous.
 
 
 45
 The issue has frequently arisen in the context of the relationship between section 547(c)(1) and (c)(3). As previously noted, section 547(c)(3) excepts from avoidance so-called "enabling loans", or "purchase money loans", and prescribes a 10-day limit for perfection of security interests taken in such transactions. Some purchase-money lenders, having failed to meet the prescribed 10-day deadline, have argued that perfection of the purchase-money security interest was nonetheless substantially contemporaneous with the giving of "new value" to the debtor. See, e.g. In re Davis, 22 B.R. 644 (Bkrtcy.M.D.Ga.1982); In re Enlow, 20 B.R. 480 (Bkrtcy.Ind.1982); In re Burnette, 14 B.R. 795 (Bkrtcy.E.D.Tenn.1981); In re Christian, 8 B.R. 816 (Bkrtcy.M.D.Fla.1981); In re Meritt, 7 B.R. 876 (Bkrtcy.W.D.Mo.1980).
 
 
 46
 As Davis notes, one line of cases holds that section 547(c)(1) is merely cumulative with section 547(c)(3), so that a transfer which occurs more than 10 days after the cash advance, thus not qualifying under section 547(c)(3), may nonetheless be deemed substantially contemporaneous under section 547(c)(1). In re Burnette, supra; In re Hall, 14 B.R. 186 (Bkrtcy.S.D.Fla.1981). Judge Kelley, the presiding bankruptcy judge in both this case and in Burnette, has concluded that section 547(c)(3) is simply one type of contemporaneous exchange, and that section 547(c)(1), although not intended to reach the transfer of security interests, may be read broadly to cover such situations as the present. In re Burnette, supra, at 802-803. The practical effect of an expansive reading in the "enabling loan" context is to give creditors "two bites at the apple." In re Davis, supra at 647.
 
 
 47
 Most courts, however, have concluded that an expansive reading of section 547(c)(1) renders section 547(c)(3) redundant and superfluous in the enabling loan context, and thus, is an unwarranted and erroneous construction. In re Murray, 27 B.R. 445 (Bkrtcy.Tenn.1983); In re Davis, supra; In re Vance, 22 B.R. 26 (Bkrtcy.D.Idaho 1982); In re Enlow, supra; In re Merritt, supra. These courts have been persuaded that Congress intended section 547(c)(3) to be the exclusive provision applicable in the enabling loan context. "Expressio unius est exclusius alterius."
 
 
 48
 Although this case does not involve an "enabling loan", we are also persuaded that expansion of section 547(c)(1)'s reference to contemporaneity beyond 10 days in the context of transfers of security interests is erroneous. The particular problems posed by the delay between creation and perfection of security interests were well recognized by Congress. One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of "secret liens" by invalidating all transfers occurring within 90 days prior to the filing of the petitions. Thus, creditors are discouraged from waiting until the debtor's financial troubles become all-too-manifest before recording security interests. Section 547(e)(2)(A) and (B) reflect this concern by providing that a transfer of a security interest relates back to the date of the underlying transaction if perfection occurs no more than 10 days afterwards; if perfection occurs more than 10 days later, the transfer is deemed to occur at the date of perfection.
 
 
 49
 The lower courts' broad reading of section 547(c)(1) effectively negates section 547(e)(2). Assuming the interval between creation and perfection to straddle the 90-day cutoff, although a security interest is perfected more than 10 days after the underlying transaction, and is thus voidable as a preference, the transfer might still be preserved if it is found to be part of a "substantially contemporaneous" exchange. Such hopeless conflict cannot have been intended by Congress.
 
 
 50
 Further, the evidentiary problems inherent in an expansive reading of section 547(c)(1) embody a Pandora's box of evils, even if no risk of fraud or misrepresentation was present in this case.
 
 
 51
 [S]uch a stance invites litigation over the question when in fact a transfer is "substantially contemporaneous". There are no objective standards for determining this fact and the courts are having great difficulty in determining the issue, creating much uncertainty in the law. In re Vance, supra at 28.
 
 
 52
 The lower courts noted that the facts of this case cry out for application of the contemporaneous exchange exception. However, the lower courts' conviction that delayed perfection of the security interest resulted from fortuitous circumstances entirely beyond Security Mutual's control and unattributable to negligence is not entirely well-founded. Under Tennessee's expedited title procedure, T.C.A. 55-3-114, discharge of a lien may be noted upon the certificate of title within 72 hours from demand.* Thus, Security Mutual is to some extent responsible for its own predicament. Although there can be no doubt that the parties' clear intent to effectuate a contemporaneous exchange was frustrated, the statute nonetheless requires that the exchange in fact be contemporaneous. Section 547(c)(1)(B). The lower courts' interpretation places too little emphasis on the necessity of temporal proximity between the loan and the transfer of the security interest.
 
 
 53
 If the sole test is the intention of the parties as required in 11 U.S.C. Sec. 547(c)(1)(A), then it would be necessary for the Court to conduct extensive factual inquiries into situations which would lend themselves to collusion and the fabrication of evidence, and perhaps render the preference section inoperable against all but the most flagrant violations. The purpose of adding the requirement of 11 U.S.C. Sec. 547(c)(1)(B) is to avoid the inherent evidentiary difficulties of 11 U.S.C. Sec. 547(c)(1)(A) by requiring that the parties' conduct bears out their intentions. Butz v. Pingel, supra at 238-239.
 
 
 54
 In light of the explicit grace periods provided for perfection of security interests in sections 547(e)(2) and 547(c)(3), Congress has clearly struck the balance in favor of repose in this area of the law. Case-by-case development of the contemporaneous exchange exception would quickly result in uncertainty and protracted litigation, delaying, not expediting, the satisfaction of creditors' claims and the debtor's return to financial health. The policies of discouraging creditors "from racing to the Courthouse to dismember the debtor during his slide into bankruptcy" and facilitating equality of distribution would be severely eroded under the lower courts' construction of the statute. H.R. 595.
 
 
 55
 In conclusion, we believe the District Court and the Bankruptcy Court erred in ruling that Security Mutual's perfection of its security interest 33 days after granting a loan to the Arnetts was part of a substantially contemporaneous exchange of new value. Section 547(e)(2)(B) explicitly provides that a security interest perfected more than 10 days after its creation does not relate back and is deemed to have occurred on the date of perfection. The applicability of section 547(c)(1) to delayed perfection of security interests is thus limited to 10 days. The transfer of Security Mutual's security interest is not excepted from the trustee's avoidance powers, and may be set aside as a voidable preference.
 
 
 56
 Because the bankruptcy judge found no preference, he did not reach the cross-claim of Security Mutual against ANB in related proceedings. Thus, remand is necessary for additional findings to comply with Bankr.Rule 7052, 11 U.S.C. Bankr.Rule 8013, 11 U.S.C.
 
 
 57
 Reversed and remanded for further proceedings.
 
 WELLFORD, Circuit Judge, dissenting:
 
 58
 I would affirm District Judge Frank Wilson and the Bankruptcy Judge in this case. I agree with them that the credit transaction involved comes within the meaning of a "contemporaneous exchange" under 11 U.S.C. Sec. 547(c)(1), and that Security Mutual Finance Corporation's perfecting of its lien and security interest, although delayed, was excepted from the preference provisions of Sec. 547(b). Not only is it clear that the transaction in dispute was intended to be contemporaneous, but appellee Security Mutual acted diligently under the circumstances to protect its security position under the law.
 
 
 59
 Judge Wilson deemed it to be essentially, a question of fact as to whether a transaction extending beyond ten days is "substantially contemporaneous" under the law. The Bankruptcy Court decided the question in accordance with the clear intent of the parties. The result reached, in my view, was in accord with legislative purpose and with sound authority. See In re Martella, 22 B.R. 649 (D.Colo.1982); In re Burnette, 14 B.R. 795 (E.D.Tenn.1981); In re Swartz Clothiers, 15 B.R. 590 (E.D.Va.1981); In re Advance Glove Co., 25 B.R. 521 (E.D.Mich.1982); 4 Collier on Bankruptcy, Sec. 547.37 (15th ed. 1981); H.R.Rep. # 595, 95th Cong., 1st Sess. 373 (1977).[1]
 
 
 60
 I conclude that Sec. 547(c)(1) of the applicable Bankruptcy Act preserves the principles set out in Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917), and National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). Whether a transaction is "substantially contemporaneous" contemplates factors other than a ten day limitation, it calls for consideration of the intention of the parties and other surrounding circumstances, including the equities of the particular case. I disagree with Judge Miles' conclusion that "Congress has clearly struck the balance in favor of repose in this area ...." This area of the law is far from "clear," and the better authority, including the decision of Judge Wilson herein, indicates precisely to the contrary.
 
 
 
 *
 Honorable Wendell A. Miles, Chief United States District Judge for the Western District of Michigan, sitting by designation
 
 
 *
 Several states have adopted expedited title procedures similar to Tennessee's. Florida also permits recordation of the lien on the certificate within 72 hours after demand. F.S.A. Sec. 319.323. Colorado requires the authorized agent of the county to deliver within 48 hours the certificate of title upon which a lien has been noted to the state director of motor vehicles, C.R.S.A. 42-6-122, and Ohio requires the county clerk to notify the registrar of motor vehicles of the notation of lien on the same day as the certificate is presented for notation of the lien, R.C.O. 4505.01 et seq
 In a variation upon these truly expedited procedures, other states require lienholders whose liens have been discharged to execute a release of the lien within a certain period of time after demand, typically 10 to 30 days, and to then file the release with the pertinent authority. Generally, such states have adopted, or follow the pattern established by, the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. Such states are Alabama, Code of 1975 32-8-64; Arkansas, A.S.1947 75-155; Connecticut, C.G.S.A. 14-188; Delaware, 21 Del.C. 1953 Sec. 2339; Idaho, I.C.A. 49-413; Georgia, O.C.G.A. 68-421a; Illinois, I.R.S. ch. 95 1/2 3-205; Kansas, K.S.A. 8-135(6); Maine, 29 M.R.S.A. Sec. 2405; Massachusetts, G.L. c. 90D Sec. 24; Michigan, M.C.L.A. Sec. 257.238; Minnesota, M.S.A. Sec. 168A.20; Mississippi, Miss.Code 1972 63-21-49; Missouri, M.R.S.A. Sec. 301.640; Nebraska, R.S.N. 60-110 (also requiring the county clerk to notify a prior lienholder of a junior lien within 15 days after presentment of junior lien for recording); also see South Dakota's statute to the same effect, S.D.C.L. 32-3-43, and Colorado's, C.R.S.1973 42-6-127.5; New Hampshire, N.H.R.S.A. 269-A:49; New Jersey, N.J.S.A. 39:10-10; New York; North Carolina, G.S. 20-58.4; North Dakota, N.D.C.C. 39-05-16.1; Oklahoma, O.S.A. Sec. 23.26; Rhode Island, G.L.1956 31-3.1-22; South Dakota, S.D.Cod.Laws 32-3-43; Vermont, 23 V.S.A. Sec. 2045; Virginia, Va.Code 1950 46.1-76; Wisconsin, W.S.A. Sec. 342.22. The District of Columbia provides for only 72 hours for the lienholder to note satisfaction of his lien on the certificate and deliver it to the recording authority. D.C.Code 1981 Sec. 40-711. Kentucky requires the county clerk to record a lien upon the certificate within 5 days of presentment, and to note filing of a termination statement also within 5 days. K.R.S. Sec. 186.045. West Virginia makes it a misdemeanor for a lienholder to fail to execute a release within 15 days after demand. W.Va.Code 17A-4A-8.
 In yet another variation a few states merely require the lienholder to "immediately" execute a release upon satisfaction of the lien. Pennsylvania, 75 Pa.C.S.A. Sec. 1135; Maryland, Ann.Code 1957 Tr. Sec. 13-2092. Iowa requires a release of a junior lien to be noted on the same day as the title is delivered to the county treasurer for such recordation. I.C.A. Sec. 321.50(3). The remaining states do not fit these general patterns of establishing time limits to insure prompt recordation or discharge of liens upon motor vehicle certificates of title.
 
 
 [1]
 There was no "race to the courthouse" here to dismember the debtor