**In the Matter of James Anthony NORSWORTHY, Debtor.**

**Adam M. Goodman, Trustee, Plaintiff,**

**v.**

**Southern Horizon Bank, Defendant.**

**Bankruptcy No. 05–15098–WHD.**
**Adversary No. 06–1070.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

May 8, 2007.

Mark C. Walker, Smith, Welch & Brittain, Stockbridge, GA, for Defendant.

## *ORDER*

W.H. DRAKE, Bankruptcy Judge.

Before the Court are Cross Motions for Summary Judgment filed by the Plaintiff Adam M. Goodman (hereinafter the "Trustee"), in his capacity as trustee of the Chapter 13 bankruptcy estate of James Anthony Norsworthy (hereinafter the "Debtor"), and the defendant, Southern Horizon Bank (hereinafter "SHB"). The motions arise from a complaint to avoid a transfer of an interest in property of the Debtor, pursuant to section 547 of the Bankruptcy Code. Accordingly, this matter constitutes a core proceeding over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(F); 1334.

### FINDINGS OF FACT

On November 23, 2005, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The Debtor owns real property located at 152 Hamm Road, Jackson, Georgia (hereinafter the "Property"). The Debtor granted SHB a security interest in the Property pursuant to a security deed (hereinafter the "Security Deed") dated December 30, 2004. The security interest in the Property secured funds that were used by the Debtor to purchase his primary residence located at 3445 Bill Gardner Parkway, Locust Grove, Georgia (hereinafter the "Residence").

The Security Deed was filed for recordation with the Clerk of the Superior Court of Butts County on November 21, 2005. *See* Joint Statement of Undisputed Facts, ¶ 4.

Both parties have filed motions for summary judgment. Both motions were filed outside the time permitted under Bankruptcy Local Rule 7056–1(b). From the fact that the parties appeared for oral argument and did not raise the issue, the Court finds that the parties have each abandoned their opposition to the Court's consideration of the other's motion. SHB has also objected to the Court's consideration of the Trustee's untimely response to SHB's motion. Even if the Court were to disregard the Trustee's response, the Court would still be required to find, even in the absence of a response, that SHB is entitled to summary judgment. *See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099 (11th Cir.2004) ("[S]ummary judgment, even when unopposed, can only be entered when 'appropriate.' ").

### Conclusions of Law

#### A. *Summary Judgment Standard*

In accordance with Rule 56 of the Federal Rules of Civil Procedure (applicable to bankruptcy pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure), the Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of

establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* FED.R.CIV.P. 56(e). Once met, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56(c)); *see also Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991). When the moving party does not bear the burden of proof, it must demonstrate a lack of evidence to support at least one essential element of the opposing party's case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The Court will examine the record to determine whether either Motion provides a sufficient legal basis such that one party is entitled to judgment as a matter of law. *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988); *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991).

#### B. *The Trustee Is Not Entitled to Summary Judgment Because He Has Not Established All Elements of a Preferential Transfer Under Section 547(b)*

Section 547 of the Bankruptcy Code authorizes the post-petition recovery

of those pre-petition transfers that are deemed to be preferential in nature. The elements of a preference are set forth in section 547(b), which permits a trustee to avoid any pre-petition transfer of an interest of a debtor in property—

 (1) to or for the benefit of a creditor;

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

 (3) made while the debtor was insolvent;

 (4) made—

 (A) on or within 90 days before the date of the filing of the petition; or

 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time was an insider; and

 (5) that enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title;

 (B) the transfer had not been made; and

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The burden of proving each of the above elements falls on the trustee. *See id.* § 547(g).[1]

 The creation of a security interest in property is considered a transfer for purposes of section 547(b). *See* 11 U.S.C. § 101(54); *In re Harley,* 41 B.R. 276 (Bankr.N.D.Ga.1984) (Drake, J.). Assuming the transfer occurred within the preference period, the Trustee is entitled to a presumption that the Debtor was insolvent when the transfer was made, *see* 11 U.S.C. § 547(f), and SHB has presented no evidence to rebut the presumption.

 The facts agreed to by the parties have established that the security interest was transferred to SHB on account of an antecedent debt and within the ninety days before the date of the filing of the Debtor's petition. Under section 547(e)(2), unless the transfer is perfected within thirty days,[2] the transfer is deemed to have been "made" at the time it is perfected. *See* 11 U.S.C. § 547(e)(2)(A)-(B); *see also In re Puckett,* 2006 WL 2089907 (Bankr. E.D.Tenn. June 26, 2006) ("[I]f a security interest is not promptly perfected, the Bankruptcy Code treats the transfer as having been made at the time of perfection, rather than the time the mortgage, deed of trust, security deed, or security agreement was signed."). Under section 547(e)(1)(A), the transfer is "perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A); *see also In re Wall,* 216 B.R. 1016 (Bankr.M.D.Ga.1998). "[S]tate law governs ... when a bona fide purchaser of the property could not have obtained an interest in the property equal to or superior to that possessed by" the transferee. *Gordon v. NovaStar Mortgage, Inc. (In re Hedrick),* 04–6420–JEM at 8 (Bankr.N.D.Ga. Aug. 31, 2005), *affirmed NovaStar Mortgage, Inc. v. Gordon (In re Hedrick),* Civ. Case No. 05–2689–TCB (N.D.Ga. Mar. 1, 2007). Under Geor-

---

1. The Trustee need not recover an avoided security interest pursuant to section 550. *See In re Schmiel,* 319 B.R. 520 (Bankr.E.D.Mich. 2005).

2. Section 547(e)(2)(A) and (B), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter the "BAPCPA"), are applicable to this proceeding, as the Debtor's bankruptcy petition was filed after the October 17, 2005 effective date of the BAPCPA.

gia law, the "date on which a security deed becomes effective against a bona fide purchaser is the date on which it is filed, not the date on which it was recorded." *Id.* at 9 (citing Ga.Code Ann. § 44–2–2(b); 2 Pindar's Georgia Real Estate Law and Procedure, § 21–18, pp. 601–02 (6th ed.2004)).

■ Here, the Debtor executed the Security Deed on December 30, 2004, and it was not recorded within thirty days thereafter. Accordingly, under section 547(e)(2), the date of the transfer of the security interest in the Property is deemed to be the time of perfection, which, in accordance with section 547(e)(1)(A) and Georgia law, occurred on November 21, 2005 when SHB filed the deed for recordation. As the Debtor filed his bankruptcy petition on November 23, 2005, the transfer of the security interest occurred within the ninety days prior to the petition date. The facts and applicable law establish that the transfer of the security interest was made on account of an antecedent debt, which was created when the loan proceeds were distributed, and that the transfer occurred within the preference period.

SHB has asserted that the transfer at issue should not be treated as a preferential transfer under what amounts to an appeal to general fairness. In support of this argument, SHB notes that it provided the Debtor with the funds to enable him to purchase his home and that it would not have done so without the promise of a security interest in both the Residence and the Property. SHB argues that this situation places SHB in a better position than the creditor involved in *Gordon v. NovaStar Mortgage, Inc. (In re Hedrick)*, 04–6420–JEM (Bankr.N.D.Ga. Aug. 31, 2005), because SHB actually came out-of-pocket with new funds, rather than simply refinancing an existing debt. By analogy, SHB urges, if the transaction in *Gordon*

was not found to be a preference, the instant transaction is also non-preferential.

In *Gordon*, the debtors obtained a new mortgage from NovaStar in order to refinance existing first and second mortgages on their residence. The security deed was executed on December 4, 2003, the pay-off checks cleared on December 12, 2003, and NovaStar's mortgage was recorded on January 7, 2004, which was eighty-nine days before the debtors filed their bankruptcy petition. The Chapter 7 trustee sought to avoid NovaStar's mortgage as a preference and asserted that, because the mortgage was not perfected within the ten-day period provided in section 547(e)(2), the transfer of the security interest occurred at the time the mortgage was recorded on January 7, which was within the preference period.

The bankruptcy court found that, under the doctrine of equitable subordination, NovaStar became subrogated to the rights of the existing lien holders once the pay-off checks cleared, which was only eight days after the execution of the deed. The court concluded that NovaStar's security interest was "perfected" within the meaning of section 547(e)(1) at the time the pay-off checks cleared because no bona fide purchaser could have obtained a right greater than NovaStar's after the time of the subrogation. Because the security interest was perfected within ten days after the execution of the deed, the transfer of the security interest was deemed to have occurred at the time the transfer became effective as between NovaStar and the debtors, which was December 4, 2003 and was outside the preference period.

■ As stated in *Gordon*, under Georgia law, equitable subrogation applies when " 'one advances money to pay off an incumbrance, upon an agreement with a debtor that the security shall be assigned to him, or a new one given to him, will be subro-

gated to the rights of the incumbrancer; and, if the new security turns out to be defective, he will be substituted to the benefit of the prior incumbrance, unless the superior or equal equities of others would be prejudiced thereby.'" *Gordon,* at 9–10 (quoting *Merchants' & Mechanics' Bank v. Tillman,* 106 Ga. 55, 31 S.E. 794 (1898)). In this case, equitable subrogation does not apply to alter the time upon which the transfer occurred simply because the Debtor was not refinancing an existing debt on the Property. SHB recognizes that equitable subrogation does not technically apply, but argues that, as a matter of equity, SHB should be afforded an exception from a finding that its transaction constitutes a preference because its provision of a completely new loan is somehow more equitable than the provision of funds to pay off an existing loan.

Even if the Court were to agree that providing a new loan is somehow more equitable than refinancing an existing loan, there is more to the equitable subrogation defense than fairness. There is also the assumption that no harm should come to any third party as a result of the application of this equitable remedy. As the court noted in *Gordon,* in a situation in which equitable subrogation applies, no harm should come to any lender who might consider making a loan to the debtor on the property. If a potential lender were to conduct a title search, the lender would see that the property is encumbered. The potential lender would not know whether that encumbrance is held by one lender or another, but that fact would be irrelevant. Either way, the potential lender has constructive notice that some party holds a superior interest in the property. In this case, where no existing loan

is being paid off, there is no constructive notice of the fact that an encumbrance exists. Accordingly, the no-harm rationale for permitting the new lender to step into the shoes of the old lender, notwithstanding the new lender's failure to perfect in a timely manner, does not exist.

This type of argument has also been made in other cases under other names, such as the "ear marking doctrine" or the "diminution of the estate theory." In all of these cases, the basic rationale for finding that no preference occurred upon a refinancing transaction gone wrong was that unsecured creditors were not harmed by the transaction because one secured creditor was simply substituted for another. *See In re Davis,* 319 B.R. 532 (Bankr. E.D.Mich.2005) (earmarking doctrine applied to refinanced mortgage because no diminution in estate was caused when late-recorded mortgage replaced existing mortgage);[3] *In re Ljubic,* 362 B.R. 914 (Bankr. E.D.Wis.2007) (finding of preferential transfer requires that the trustee show a diminution of the estate; a diminution of the estate occurs if the old creditor's security interest was terminated prior to the transfer of the new security interest); *In re Moeri,* 300 B.R. 326 (Bankr.E.D.Wis. 2003) (same).

Here, however, there is no rationale for finding that the transaction at issue did not harm the Debtor's unsecured creditors. SHB was not being substituted for another secured creditor. The transfer of the security interest in the Property encumbered an otherwise unencumbered asset to the detriment of the Debtor's unsecured creditors. *See, e.g., In re Issac Leaseco, Inc.,* 389 F.3d 1205 (11th Cir. 2004) ("Even if the estate was not diminished by the transactions, the analysis of

---

**3.** Many courts have held that the "ear marking doctrine" is not properly applied in the case of the transfer of a security interest. *See*

*In re Lazarus,* 478 F.3d 12 (1st Cir.2007); *In re Messamore,* 250 B.R. 913 (Bankr.S.D.Ill. 2000).

Barrett Dodge is backward; the primary issue is not the enlargement of the estate, but its division. A larger estate that is divided in favor of Barrett Dodge does not serve the prime policy of bankruptcy: equal distribution. Had the transactions not been avoided, Barrett Dodge would have retained a greater percentage of the estate of LeaseCo than if Barrett Dodge had been forced to 'take pot luck with the rest of the debtor's unsecured creditors.' ").

In short, the fact that SHB loaned the Debtor funds with the expectation that it would receive a security interest in the Property does not mandate or permit the Court to ignore a transfer that would otherwise meet the statutory elements necessary of a preference. Had SHB recorded its security interest within the time permitted by section 547(e), its expectations would have been met.

■ That being said, the Trustee has presented no evidence from which the Court can determine that the transfer, if not avoided, would have enabled SHB to receive more in a Chapter 7 liquidation than it would have received absent the transfer. The Trustee introduced no evidence that would establish the value of the assets in the bankruptcy estate or the amount of the claims against the Debtor's assets. Although the Trustee stated in his statement of undisputed facts that SHB would have received more from the transfer of the security interest than it would have received absent the transfer in a liquidation, this statement is not a statement of fact, but a conclusion of law. *See In re Houston Steel Fabricators, LLC,* 357 B.R. 680 (Bankr.M.D.Ga.2006). ("[T]he statement is a legal conclusion for which Plaintiff has provided no factual basis."). Accordingly, even though SHB has not specifically controverted the Trustee's statement, the Court cannot deem the statement to be admitted. Even in the absence of argument by SHB, the Trustee must establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. The Trustee has failed to do so and is, accordingly, not entitled to summary judgment.

### C. SHB's Motion for Summary Judgment

In its motion for summary judgment, SHB asserts that the Trustee has failed to meet all elements of section 547(b). Specifically, SHB argued, as noted above, that the transfer occurred outside the preference period and, even if it did occur within the preference period, the transfer was not a preference because SHB extended funds to the Debtor that enabled him to purchase the Residence. For the reasons stated above, the Court has rejected those arguments. SHB did not contest the Trustee's allegation that the transfer enabled SHB to receive more than it would have in a hypothetical Chapter 7 liquidation. Although the Trustee is not entitled to summary judgment on his claim in the absence of evidence to support that allegation, the Court finds that granting summary judgment to SHB for this reason would not be in the best interest of the estate or the Debtor's creditors. *See United States v. Certain Real and Personal Property,* 943 F.2d 1292 (11th Cir.1991) ("A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing.").

■ Nonetheless, SHB has also raised three affirmative defenses to the avoidance of the transfer. SHB argues that subsections 547(c)(1), (2), and (3) are applicable to protect the transfer from avoidance. As to its affirmative defenses, SHB bears the burden of proof. *See* 11 U.S.C. § 547(g);

*In re Isaac Leaseco, Inc.*, 389 F.3d 1205 (11th Cir.2004).

▪ Section 547(c)(1) provides that the trustee may not avoid a preferential transfer "to the extent that such transfer was ... intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and ... in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1); *see also In re Arrow Air Inc.*, 940 F.2d 1463 (11th Cir.1991). The Trustee does not dispute the fact that SHB provided the Debtor with new value and does not question that the parties intended the exchange to be contemporaneous. At issue here is whether the exchange was "in fact a substantially contemporaneous exchange."

In cases in which there was a significant delay between the distribution of loan proceeds and the transfer of a security interest, courts have held that section 547(c)(1) does not protect the transfer from avoidance. *See, e.g., In re Pepper*, 339 B.R. 756 (10th Cir. BAP 2006) (affirming bankruptcy court's holding that exchange was not substantially contemporaneous due to delay of seven months between disbursement of loan proceeds/execution of the deed and the recording of the deed). Where the transaction involved a purchase-money security interest, the circuit courts of appeals have uniformly held that, as a matter of law, a transaction may not be excepted from avoidance under the "contemporaneous exchange exception if it meets all of the requirements of section 547(c)(3) except for the requirement that it be perfected within thirty days of the debtor's receipt of the collateral." *See In re Davis*, 734 F.2d 604 (11th Cir.1984); *In re Lazarus*, 478 F.3d 12 (1st Cir.2007); *In re Locklin*, 101 F.3d 435 (5th Cir.1996); *In re Holder*, 892 F.2d 29 (4th Cir.1989); *In re Tressler*, 771 F.2d 791 (3d Cir.1985); *In re Vance*, 721 F.2d 259 (9th Cir.1983). These courts have so held on the basis of statutory construction and legislative intent.

In *In re Davis*, the Eleventh Circuit Court of Appeals noted that the legislative intent in enacting section 547(c)(1) was to protect the avoidance of a payment by check that was intended by the parties to be a contemporaneous exchange and that Congress gave no indication that section 547(c)(1) was intended to apply to "a security interest for an enabling loan." *See Davis*, 734 F.2d at 606. Applying the statutory construction principle *"expressio unius est exclusio alterius,"* the court held that, by specifically referring to security interests securing enabling loans in section 547(c)(3), Congress intended to negate the "applicability of other means of exception" to such security interests. *See id.* at 607. Additionally, the court reasoned that permitting the transferee of a purchase-money security interest to avail itself of the contemporaneous exchange defense when it cannot satisfy the perfection requirement of section 547(c)(3) would render section 547(c)(3) "virtually meaningless" and would defeat the legislative purpose behind section 547(c)(3) of creating a "national uniform perfection period for enabling loans." *Id.; see also Locklin*, 101 F.3d at 443.

As noted by the Fifth Circuit Court of Appeals in *In re Locklin*, the Court must carefully distinguish between security interests arising from enabling loans and those arising from non-enabling loans. *Locklin*, 101 F.3d at 443 n. 9. Although the Eleventh Circuit Court of Appeals has ruled that section 547(c)(1) is not available to protect a security interest arising from an enabling loan from avoidance, it has not yet spoken on the issue of whether a security interest arising from a non-enabling loan may be protected from avoidance under section 547(c)(1) notwithstanding the

failure to perfect within the grace period provided by section 547(e)(2). There is a split among the circuit courts of appeals that have considered this issue. *Compare In re Lazarus*, 478 F.3d 12 (1st Cir.2007) (security interest must be perfected within ten-day period contained in section 547(e)(2) in order for exchange of security interest and new value to be considered "substantially contemporaneous" within the meaning of section 547(c)(1)) *and In re Arnett*, 731 F.2d 358 (6th Cir.1984) (same), *with In re Dorholt, Inc.*, 224 F.3d 871 (8th Cir.2000) (failure to perfect within time period in section 547(e)(2) does not foreclose a finding under a "flexible approach" that the exchange of the security interest and the new value were in fact "substantially contemporaneous"); *In re Marino*, 193 B.R. 907 (9th Cir. BAP 1996) (same), *affirmed*, 117 F.3d 1425 (9th Cir.1997).

In *In re Lazarus*, the First Circuit Court of Appeals held that a creditor cannot establish that the exchange of a security interest for new value was in fact a "substantially contemporaneous" exchange if the security interest was not perfected within the ten-day period (now thirty days) provided in section 547(e)(2). In doing so, the court applied the canon of statutory construction that requires the more specific provision to prevail over the more general provision. In this case, although the court recognized that no direct conflict existed, as section 547(c)(1) is broad enough to apply to the transfer of a security interest, the court reasoned that "[n]o direct conflict is required: the rationale against applying a general provision in this circumstance is to protect against 'undermin[ing] limitations created by a more specific provision.'" *Id.* at 19 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). The court explained that Congress enacted the ten-day (now thirty-day) period contained in section 547(e)(2) out of concern that mort-

gages and other security interests should be recorded *"within a reasonably brief and predefined period."* This provision was an attempt to "combat secret liens and protect those who might lend in ignorance of the mortgage." *Lazarus*, 478 F.3d at 18 (emphasis in original). The court reasoned that permitting a creditor to protect its lien without recording it within that time period would undermine this attempt. *Id.* In further support of its holding, the court noted that the broader "contemporaneous exchange" exception was "added late in the day to address a much broader generic problem—ordinary exchange of goods for check or credit payment—where recording and other perfection devices do not exist" and concluded that "[t]he test was assuredly not meant to override the specific 10–day requirement." *Id.*

Similarly, *In re Arnett*, the Sixth Circuit Court of Appeals noted that Congress understood the problems created by creditors holding "secret liens" and that section 547(e)(2) was an attempt to discourage creditors "from waiting until the debtor's financial troubles become all-too manifest before recording security interests." *Id.* at 363. The court reasoned that a broad reading of section 547(c)(1), which permits the defendant to argue that the failure to perfect within the section 547(e)(2) grace-period was "substantially contemporaneous" under the particular facts and circumstances of the case, would "effectively negate" section 547(e)(2). *Id.* In adopting this view, the court was also concerned that permitting a review into the facts and circumstances of each transaction under section 547(c)(1) would create "evidentiary problems" and would invite litigation over whether the exchange of the security interest and the provision of the new value was "in fact substantially contemporaneous." *Id.* The First Circuit Court of Appeals apparently shared this concern, not-

ing that, although the section 547(e)(2) grace period is a "mechanical deadline," it was Congress' choice to establish such a deadline and that it has the benefit of "being specific and avoiding litigation." *Lazarus*, 478 F.3d at 18.

In *In re W.T. Vick Lumber Company, Inc.*, the bankruptcy court also pointed out that, if section 547(c)(1) can expand the time for perfecting a non-enabling loan security interest, but holders of purchase-money security interests must comply with the thirty-day time limit of section 547(c)(3), non-purchase money security interests would be given "priority over purchase money security interests in bankruptcy." 179 B.R. 283, 292 (Bankr. N.D.Ala.1995). In adopting the holding of the *Arnett* court, the court reasoned that such a result could not have been intended by Congress. *Id.* (citing 1 David G. Epstein, Steven H. Nickles & James J. White, *Bankruptcy* § 6–26, pp. 604–605 (1992)).

Following the *Arnett* decision, a second line of cases has developed, which holds that the failure to perfect a non-purchase money security interest within the section 547(e)(2) grace-period does not foreclose a finding that, under section 547(c)(1), the transfer of the security interest and the provision of the new value were in fact substantially contemporaneous. *See In re Dorholt, Inc.*, 224 F.3d 871 (8th Cir.2000); *In re Marino*, 193 B.R. 907 (9th Cir. BAP 1996), *affirmed*, 117 F.3d 1425 (9th Cir. 1997); *In re Kerst*, 347 B.R. 418 (Bankr. D.Colo.2006). In reaching this conclusion, the Eighth Circuit Court of Appeals and the Ninth Circuit Bankruptcy Appellate Panel reasoned that Congress' use of the term "substantially contemporaneous" suggests that "contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intentions of the parties,

possible risk of fraud) surrounding the allegedly preferential transfer." *Dorholt*, 224 F.3d at 874; *Marino*, 193 B.R. at 914 (citing *Pine Top Ins. Co. v. Bank of America Nat. Trust and Savs. Assoc.*, 969 F.2d 321 (7th Cir.1992)). In support of its position, the *Dorholt* court stated that "Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, § 547(c)(3)." *Dorholt*, 224 F.3d at 874. Instead, Congress "chose a less rigid standard for § 547(c)(1), no doubt because that provision governs a wider variety of loans and credit transactions." *Id.* The *Dorholt* court also rejected the argument that section 547(e)(2) would serve no purpose if a creditor were permitted to shelter under section 547(c)(1), explaining that section 547(e)(2) would remain essential for determining when the security interest was transferred and whether the transfer occurred during the preference period. *See id.*

If pressed to decide between these two views, this Court would likely find that the approach adopted by the First and Sixth Circuit Courts of Appeals is better reasoned and more consistent with the reasoning employed by the Eleventh Circuit Court of Appeals in *In re Davis*. However, the Court need not do so, as, even under the more flexible approach, the facts of this case do not appear to warrant a finding of substantial contemporaneity. Those cases employing the flexible approach have considered the reasons why the creditor delayed in recording the security interest and have largely required a short delay and a reasonable explanation for the delay before making a finding that the transfer was in fact substantially contemporaneous. *See In re Stephens*, 242 B.R. 508 (D.Kan.1999) (fourteen-day delay in perfecting lien on motor vehicle, which was "due to factors beyond the control of the Bank" was substantially contempora-

neous with distribution of loan proceeds); *In re Kerst*, 347 B.R. 418 (Bankr.D.Colo. 2006) (holding that exchange was in fact substantially contemporaneous where forty-seven day delay in perfecting security interest in vehicle was not within control of the lien holder and was caused by prior creditor failing to release prior lien for thirty-eight days); *In re Vatnsdal*, 139 B.R. 472 (Bankr.D.N.D.1991) (delay of eleven months in recording mortgage "cannot be regarded as 'substantially contemporaneous' ").

Here, we are dealing with a substantial delay of almost eleven months, and SHB has pointed to no evidence in the record that would shed any light on the cause of the delay, whether the delay was beyond its control, and whether such a delay was commercially reasonable under the circumstances of this case. *See In re Pepper*, 339 B.R. 756 (10th Cir. BAP 2006) (affirming bankruptcy court's holding that exchange was not substantially contemporaneous due to delay of seven months between disbursement of loan proceeds/execution of the deed and the recording of the deed); *In re Messamore*, 250 B.R. 913 (Bankr. S.D.Ill.2000) (finding section 547(c)(1) defense not established where bank offered no explanation for delay of fifty days in perfecting title to mobile home). SHB has the burden of establishing its defense and, to warrant summary judgment, must point to admissible evidence in support of its affirmative defense. The facts established thus far indicate that the exchange was not in fact substantially contemporaneous because of SHB's failure to record its deed for almost eleven months. Accordingly, the Court cannot grant summary judgment to SHB on this ground.

 SHB also asserts that it is entitled to summary judgment because the transfer meets the "ordinary course of business" exception provided in section 547(c).

Under section 547(c)(2), the trustee may not avoid a preferential transfer to the extent such transfer was: 1) "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee" and 2) "such transfer was ... made in the ordinary course of business or financial affairs of the debtor and the transferee" or "made according to ordinary business terms." 11 U.S.C. § 547(c)(2).

The Trustee submits that the Eleventh Circuit Court of Appeals' holding in *In re Davis* should be extended to preclude a creditor from utilizing section 547(c)(2) to save a late-perfected security interest from avoidance. Several courts have held that the ordinary course of business exception is not applicable to protect the transfer of a security interest. *See In re Bobo*, 1995 WL 392524 (Bankr.D.Idaho 1995) (creditor could not use ordinary course of business defense to protect security interest in vehicle from avoidance; defense was intended to apply to payments made on a debt, not the transfer of a security interest); *In re Blackburn*, 90 B.R. 569 (Bankr.M.D.Ga. 1987) (holding that creditor could not utilize the ordinary course of business exception to protect purchase money security interest from avoidance because "[t]o allow [the creditor] to utilize the section 547(c)(2) exception to avoidance would render the enabling loan exception in section 547(c)(3) virtually meaningless").

This Court agrees that section 547(c)(2) does not apply to this situation. The plain language of the statute precludes a finding that the ordinary course of business defense applies to the transfer of a security interest. Section 547(c)(2) requires a finding that the transfer was "in payment of a debt incurred by the debtor." The Debtor did not transfer the security interest in the Property to SHB in order to pay the debt incurred by the debtor. The transfer of

the security interest simply secured the debt, but was not intended to and did not in fact serve as a payment for the debt.[4] *See In re Hermann*, 271 B.R. 892, 895 (Bankr.D.Wyo.2001) (section 547(c)(2) defense was totally inapplicable to preclude avoidance of transfer of security interest because trustee was not "seeking to avoid a debt payment"); *In re Bobo*, 1995 WL 392524 (Bankr.D.Idaho 1995) (ordinary course of business exception applies to payments on debt, which are very different from a transfer of a security interest).

■ Even if the Court were to find that section 547(c)(2) is applicable to the transfer of a security interest, there are no facts or evidence in the record from which the Court could find that the debt was incurred by the Debtor in the ordinary course of the Debtor's financial affairs, that the transfer of the security interest was made in the ordinary course of business or financial affairs of the Debtor and SHB, or that the transfer was made according to ordinary business terms. To warrant summary judgment, SHB must point to admissible evidence in the record to establish the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Here, SHB's counsel has submitted no affidavits, depositions, or other evidence to demonstrate that this transaction meets the requirements of section 547(c)(2). The Court cannot conclude that it does solely from SHB's counsel's assurances during oral argument.

Finally, SHB asserts that the transfer qualifies for the "enabling loan" exception provided in section 547(c)(3). Under section 547(c)(3), the trustee may not avoid a preferential transfer "that creates a security interest in property acquired by the debtor ... to the extent such security interest secures new value that was:" 1) "given at or after the signing of a security agreement that contains a description of such property as collateral"; 2) "given by or on behalf of the secured party under such agreement"; 3) "given to enable the debtor to acquire such property"; and 4) "in fact used by the debtor to acquire such property." To succeed under this defense, the defendant must also establish that the security interest was "perfected on or before 30 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3).

■ The Trustee asserts that this defense is not available to SHB for two reasons. First, the Debtor did not use the loan proceeds given to acquire the Property and, therefore, SHB cannot satisfy the third and fourth elements listed above. There is no factual dispute here. The parties agree that the Debtor used the funds given to him in exchange for the security interest to purchase the Residence, not the Property. SHB argues that section 547(c)(3) should apply because the Debtor gave SHB a security interest in both the Residence and the Property in order to obtain the funds necessary to purchase the Residence. Accordingly, SHB argues, the security interest at issue does secure "new value"—the loan amount—that was given at or after the signing of the security agreement that contains a description of the Property and the Residence as collateral, that the funds were given by SHB, that the funds were given to enable the Debtor to acquire the

---

4. This is not to say that a creditor could never receive a security interest in payment of a debt. For example, if a debtor assigns his right to a mortgage to a creditor in satisfaction of a debt, the transfer of the security interest would then be in payment of a debt. Here, however, the transfer of the security interest merely served to secure the debt and did not "pay" any part of the debt.

Residence, and the funds were in fact used by the debtor to acquire the Residence.

The Court must reject this argument. The fact that the Debtor had to grant a security interest in the Property in order to enable him to purchase the Residence has no bearing on whether the Debtor had to give, and in fact gave, the security interest at issue to enable him to obtain the Property. If the Trustee were seeking to avoid the security interest granted in the Residence, the result would be different. However, to benefit from the exception, the statute requires SHB to show that the Debtor granted the security interest in the Property in order to obtain the Property. The fact remains that the security interest at issue was not a purchase money security interest with regard to the Property, and, therefore, section 547(c)(3) is not a defense available to SHB.

Second, the Trustee contends that section 547(c)(3) does not protect this transaction because SHB failed to perfect its security interest within thirty days after the Debtor received possession of the Property. For the same reason discussed above, the Trustee is correct. Under section 547(e)(2), the perfection of the security interest is deemed to have occurred when the deed was filed for recordation in November 2005. Even if the Court accepted SHB's argument that the transaction was an enabling loan that permitted the Debtor to purchase the Residence and therefore section 547(c)(3) applies, SHB could not establish that the security interest was perfected within thirty days of the date on which the Debtor received possession of the Property or the Residence. Therefore, as a matter of law, SHB is unable to establish that the transfer of the security interest is protected by section 547(c)(3).

## CONCLUSION

For the reasons stated above, the Court finds that neither party is entitled to summary judgment and therefore, both motions are hereby **DENIED.** The Trustee has shown that no questions of material fact remain as to four of the five required elements of section 547(b). The Trustee has failed to prove that SHB would receive more on account of the transfer of the security interest than it would in a chapter 7 liquidation had the transfer not occurred, and SHB has failed to demonstrate that it is entitled to an affirmative defense.

The Court finds that the best interest of the Debtor's creditors is best served by permitting the Trustee an additional opportunity to establish that this transaction meets the requirements of section 547(b)(5). The Trustee may either file a renewed motion for summary judgment or may request that this matter proceed to trial. Although no judgment shall enter at this time, the legal conclusions made herein shall control the future course of this adversary proceeding.